Robert Goelet, Jr., et al., Respondents, *v.* Confidential, Inc., et al., Appellants, et al., Defendants.

First Department, March 11, 1958.

*Albert A. De Stefano* of counsel (*Bernard Schachne* with him on the brief; *Becker, Ross & Stone,* attorneys), for appellants.

*Irving I. Erdheim* of counsel (*Martin Kaufman* with him on the brief; *Erdheim & Armstrong,* attorneys), for respondents.

VALENTE, J.  Section 51 of the Civil Rights Law, gives a right of action for damages to a " person whose name, portrait or picture is used within this state * * * for the purposes of trade without the written consent first obtained ".  Special Term has sustained the sufficiency of the complaint herein as stating causes of action on behalf of both plaintiffs under section 51.  We have reached a contrary result.

The complaint purports to allege two causes of action.  In the first cause on behalf of plaintiff, Robert Goelet, Jr., it is alleged that defendants printed and published in the January, 1956 issue of their magazine, " Confidential ", a sordid article incorporating said plaintiff's name and photographs, without his consent, for the purpose of trade and for the primary purpose of amusing and astonishing the public and not for the legitimate purpose of disseminating news or actual events.  The second cause makes the same charges on behalf of plaintiff wife, Gloria Goelet.  A copy of the article published is annexed to the complaint.

In judging the sufficiency of the complaint, certain well-established principles must be applied.  In *Gautier* v. *Pro-Football* (304 N. Y. 354, 358) it was said:  " In this State, the

right of privacy rests solely in statute (*Roberson* v. *Rochester Folding Box Co.*, 171 N. Y. 538; *Rhodes* v. *Sperry & Hutchinson Co.*, 193 N. Y. 223, affd. *sub nom. Sperry & Hutchinson Co.* v. *Rhodes*, 220 U. S. 502; Civil Rights Law, §§ 50, 51). As the *Roberson* and *Rhodes* cases show, the statute was born of the need to protect the individual from selfish, commercial exploitation of his personality. Nevertheless, in construing the act, it should be borne in mind that it is partly penal in effect (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51, 55; see Civil Rights Law, § 50).''

While newspapers and magazines are published for profit, the use of a name or picture in such publications does not *ipso facto* fall within the statute's (Civil Rights Law, § 51) '' purposes of trade ''. (*Binns* v. *Vitagraph Co.*, 210 N. Y. 51; *Sidis* v. *F–R Pub. Corp.*, 113 F. 2d 806, cert. denied 311 U. S. 711; *Molony* v. *Boy Comics Publishers*, 277 App. Div. 166; *Lahiri* v. *Daily Mirror*, 162 Misc. 776.) As Justice SHIENTAG said in *Lahiri* v. *Daily Mirror* (*supra*, pp. 781–782): '' The public policy involved in leaving unhampered the channels for the circulation of news and information is considered of primary importance, subject always, of course, to the common-law right of redress for libel. A free press is so intimately bound up with fundamental democratic institutions that if the right of privacy is to be extended to cover news items and articles of general public interest, educational and informative in character, it should be the result of a clear expression of legislative policy.'' (See, also, *Callas* v. *Whisper, Inc.*, 198 Misc. 829, affd. 278 App. Div. 974, affd. 303 N. Y. 759; *Koussevitzky* v. *Allen, Towne & Heath*, 188 Misc. 479, affd. 272 App. Div. 759.)

Nor does the statute give a cause of action to those who through their own activities have become public figures. '' Those seeking notoriety will be said to have waived, and those having it thrust upon them to have lost, their right to personal seclusion.'' (Hofstadter — Development of the Right of Privacy in New York, p. 39.) (See, also, 52 Col. L. Rev. 664.) Once a person has sought publicity he cannot at his whim withdraw the events of his life from public scrutiny (*Cohen* v. *Marx*, 94 Cal. App. 2d 704). Where there has been no attempt to conceal occurrences in one's life (the complaint alleges that plaintiff Robert Goelet, Jr. was well known), the notoriety thus obtained places one's activities in the pitiless light of publicity and renders him a legitimate item of news.

A qualification to the right to publish items regarding public figures was stated in the *Gautier* case (*supra*). Judge FROESSEL said (p. 359): '' While one who is a public figure or is

presently newsworthy may be the proper subject of news or informative presentation, the privilege does not extend to commercialization of his personality through a form of treatment distinct from the dissemination of news or information (*Redmond* v. *Columbia Pictures Corp.*, 277 N. Y. 707; *Franklin* v. *Columbia Pictures Corp.*, 246 App. Div. 35, affd. 271 N. Y. 554; *Binns* v. *Vitagraph Co.*, supra; *Sutton* v. *Hearst Corp.*, 277 App. Div. 155).''

Plaintiffs claim that the article in question involves a fictional, sensational and distorted representation, purporting to be a true portrayal of highly intimate details of their lives, accompanied by their photographs; and that such material cannot be deemed to be a matter of legitimate public interest. In *Sutton* v. *Hearst Corp.* (277 App. Div. 155) this court, by a divided vote, held that a highly embellished or sensationalized version of the facts with imaginative touches contributed by the author went beyond the immunity of freedom of the press in dealing with items of newsworthy value. However, the instant case is clearly distinguishable. In *Sutton* a person known only to her friends and acquaintances was plucked out of obscurity and cast into the public eye. Here an admittedly public figure has had additional light shed on his conduct in public.

Plaintiffs would have this court take judicial notice that the very nature and reputation of appellants' magazine '' Confidential '', is to capitalize on sensational intimate articles regarding prominent individuals, and not merely to convey simple newsworthy items to its readers. Judge CLARK in *Sidis* v. *F–R Pub. Corp.* (*supra*, p. 809) stated: '' Regrettably or not, the misfortunes and frailties of neighbors and ' public figures ' are subjects of considerable interest and discussion by the rest of the population. And when such are the mores of the community, it would be unwise for a court to bar their expression in the newspapers, books and magazines of the day.'' (See, also, dissenting opinion, PECK, P. J., in *Sutton* v. *Hearst Corp.*, *supra*, pp. 165–166.)

We are not unmindful of the daily content of our current newspapers and periodicals. In addition to the vast growth of the gossip columns, we find therein detailed reports of the piquant facts in matrimonial litigation and the colorful escapades and didoes of well-known persons which are not unlike those in the article about which plaintiffs complain. Even a cursory examination of the contents of some of our daily newspapers makes evident that such stories are part and parcel of the reading habits of the American public. We cannot under-

take to pass judgment on those reading tastes. The increased circulation of magazines such as "Confidential" is mute testimony that the public is interested in the kind of news those magazines purvey. If that be the case, then the courts can only grant a remedy when the accounts of activities of persons infringe on the law of libel or where there has been a use for purpose of trade or advertising by a commercialization of a personality "through a form of treatment distinct from the dissemination of news or information".

While the article *sub judice* is a lurid and spicy delineation of the activities of plaintiffs, it obviously is not fictionalized nor is it a treatment of public figures distinct from the dissemination of news or information. Hence, the complaint fails to state a cause of action under section 51 of the Civil Rights Law, and should have been dismissed.

The order should be reversed on the law, with costs and motion to dismiss complaint should be granted.

BOTEIN, P. J., BREITEL, FRANK and McNALLY, JJ., concur.

Order so far as appealed from unanimously reversed on the law, with $20 costs and disbursements to the appellants and the motion to dismiss the complaint granted, with $10 costs. The clerk is directed to enter judgment in favor of the defendants-appellants dismissing the complaint, with costs.