**Frank MAN, Plaintiff,**

v.

**WARNER BROS. INC., Warner Bros. Distributing Corporation and Wadleigh-Maurice, Ltd., Defendants.**

**70 Civ. 3015.**

United States District Court,
S. D. New York.

Aug. 31, 1970.

Jerome I. Meyers, New York City, for plaintiff.

Stroock & Stroock & Lavan, New York City, for defendants Warner Bros. Inc. and Warner Bros. Distributing Corporation; Charles G. Moerdler, Nathan Z. Dershowitz and Henry J. Silberberg, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff moves for a preliminary injunction and defendants cross-move for summary judgment dismissing the complaint under Rules 12(b) and 56(b), Fed. R.Civ.P.

This diversity action is based on New York's right of privacy statute. New York Civil Rights Law § 51, McKinney's Consol.Laws, c. 6.

Plaintiff, a professional musician, at "someone's" request, mounted the stage at the renowned Woodstock Festival, held at Bethel, N. Y., in August 1969, and played "Mess Call" on his Flugelhorn before 400,000 people and movie cameras. The festival was of wide public interest and was extensively reported in newspapers, magazines, radio, television and other news media throughout the country and the world. Over 120 hours of sound track and motion pictures of the event were recorded and later reduced to a length suitable for exhibition as a motion picture in theaters under the title "Woodstock." Plaintiff claims, and we will assume for the purpose of this motion, that defendants, the producers and distributors of the film, have included his performance at the festival in the film without his consent.

There can be no question that the film has been and still is being commercially exploited by wide circulation, distribution and exhibition in movie theaters throughout the country and the world.

The film depicts, without the addition of any fictional material, actual events which happened at the festival. Nothing is staged and nothing is false. It begins with the scene of the preparation and construction which preceded the event, moves on to the arrival of the vast crowds, the traffic problems, weather, mud, the artists, the activities of the audience, the reaction of the community, and concludes with the departure of the crowds and attempts to restore the ravaged property.

There is no genuine issue about any of the foregoing facts which are taken either from the complaint or from unchallenged averments in affidavits. The parties do dispute whether the film is a "documentary," but that quarrel is of no moment, for our concern is not with labels but with facts. The uncontroverted and incontrovertible fact is that the motion picture in which plaintiff says he appears presents a true account of what actually happened at an event of great public interest. Plaintiff does not even allege falsity, malice or disregard for the truth on the part of defendants in depicting and exploiting this highly publicized event.

Section 51 of the Civil Rights Law authorizes an action for damages and injunctive relief where a person's name, portrait or picture is used for advertising or for purposes of trade without that person's consent. Recent cases have engrafted exceptions and restrictions which preclude literal application of the statute in order to avoid abridgement of the constitutional right in the free dissemination of thoughts, ideas, newsworthy events and matters of public interest. These cases establish that in light of the constitutional guarantee of free speech, Section 51 may not be applied to afford relief either to a public figure or in a matter of public interest in the absence of proof that the defendant published false material with knowledge of its falsity or in reckless disregard of the truth. Time, Inc. v.

Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed. 2d 456 (1967); Sidis v. F-R Pub. Corp., 113 F.2d 806, 810 (2d Cir.), cert. denied, 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940); Cullen v. Grove Press, Inc., 276 F.Supp. 727 (S.D.N.Y.1967); Estate of Hemingway v. Random House, Inc., 23 N.Y.2d 341, 343, 352, 296 N.Y.S.2d 771, 244 N.E.2d 250 (1968); Spahn v. Julian Messner, Inc., 21 N.Y.2d 124, 127, 286 N.Y.S.2d 832, 233 N.E.2d 840 (1967). Plaintiff argues that these cases do not apply either to a motion picture shown commercially or to nonpublic figures. Neither argument is tenable. Clearly, motion pictures are within the free speech and free press guarantees of the First and Fourteenth Amendments. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); University of Notre Dame du Lac v. Twentieth Century-Fox Film Corp., 22 A.D.2d 452, 457–458, 256 N.Y.S.2d 301 (1st Dep't), aff'd 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965).

■ The mere fact that defendants are spurred by the profit motive and engaged in the commercial exploitation of the motion picture does not negate their right to depict a matter of public interest or to advertise the picture by the showing of a "trailer" (coming attraction). Sidis v. F-R Pub. Corp., *supra*, 113 F.2d at 811; Humiston v. Universal Film Mfg. Co., 189 App.Div. 467, 178 N.Y.S. 752 (1st Dep't 1919); Koussevitzky v. Allen, Towne & Heath, Inc., 188 Misc. 479, 68 N.Y.S.2d 779 (Sup.Ct., N.Y.Co.), aff'd 272 App.Div. 759, 69 N.Y.S.2d 432 (1947).

■ Accepting plaintiff's frivolous contention that a professional entertainer, performing on a stage before 400,000 people, is not a public figure, there is still no merit to the point. It is plain that the restrictions on the application of Section 51, discussed above, are not limited to public figures.

In Cullen v. Grove Press, Inc., *supra*, correction officers sought an injunction under Section 51 against the showing of a film, "Titicut Follies," documenting real life care and treatment of inmates at a correctional institution where plaintiffs were employed. Although the challenged expression was in the form of a motion picture and notwithstanding that plaintiffs were not public figures, the court denied the motion for a preliminary injunction in view of the legitimate public interest in such matters. In doing so, the court was merely applying the teaching of New York's highest court in Estate of Hemingway v. Random House, *supra*, which clearly holds that the constitutional gloss on Section 51 applies not only to public figures but to matters of public interest as well. 23 N.Y.2d at 352, 296 N.Y.S.2d 771, 244 N.E.2d 250.

Plaintiffs in Time, Inc. v. Hill, *supra*, were members of a family held captive in their house for several hours by escaped convicts. The story attracted national attention. Years later, a novel entitled "The Desperate Hours" was written about the family. The book was made into a play and then a movie. When the play was previewed, "Life" magazine printed an article about Hill's experience. The *Hill* plaintiffs were certainly not public figures but victims of a sensational event which thrust them into the public eye.

■ The principle that matters of public interest may be reported or depicted in the absence of actual malice free from liability under Section 51 has been extended to the performance of an animal trainer at half time at a football game, Gautier v. Pro-Football, Inc., 304 N.Y. 354, 107 N.E.2d 485 (1952), the conditions of a little-known hotel near Augusta National Golf Club, the site of the Masters Tournament, Bon Air Hotel, Inc. v. Time, Inc., 295 F.Supp. 704, 707 (S.D.Ga.1969), the backward flight of a golf ball striking the golfer's partner, Sellers v. Time, Inc., 299 F. Supp. 582 (E.D.Pa.1969), and police raids on the home of a magazine distributor thought to be a purveyor of obscenity, Rosenbloom v. Metromedia, Inc., 415 F.2d 892 (3d Cir. 1969).

There can be no question that the Woodstock Festival was and is a matter of valid public interest.

 Plaintiff also argues that a movie depicting Woodstock is no longer news because of the lapse of time. The affidavits show, however, that newspaper articles and recent television programs still refer repeatedly to Woodstock. The bizarre happenings of the festival were not mere fleeting news but sensational events of deep and lasting public interest.

Again, in *Hill*, three years had passed since the event. Section 51 does not and cannot prohibit "publication of matter which is of legitimate public or general interest although no longer current." Molony v. Boy Comics Pubs., Inc., 277 App.Div. 116, 98 N.Y.S.2d 119 (1st Dep't 1950); Sidis v. F-R Pub. Corp., *supra.*

 Moreover, it seems to us that Section 51 was never intended to apply to professional entertainers who are shown giving a performance before a public audience. Plaintiff, by his own volition, placed himself in the spotlight of a sensational event which exposed him to the glare of publicity. That fact, without more, we think, makes him newsworthy and deprives him of any right to complain of a violation of Section 51. "Those seeking notoriety will be said to have waived, and those having it thrust upon them to have lost, their right to personal seclusion." Hofstadter, Development of the Right of Privacy in New York, p. 39. See Goelet v. Confidential, Inc., 5 A.D.2d 226, 171 N.Y.S.2d 223 (1st Dep't 1958). That view was noted by former Chief Judge Desmond, concurring in Gautier v. Pro-Football, Inc., *supra*, who said:

"My difficulty is that there was no invasion of any 'right of privacy'. Plaintiff, a professional entertainer, gave his show before a vast audience in an athletic stadium. His grievance here is not the invasion of his 'privacy'—privacy is the one thing he did not want, or need, in his occupation. His real complaint, and perhaps a justified one, but one we cannot redress in this suit brought under the New York 'Right of Privacy' statutes, is that he was not paid for the telecasting of his show." 304 N.Y. at 361, 107 N.E.2d at 489.

 Finally, the incidental use of plaintiff's forty-five second performance in defendants' motion picture of this public event is surely *de minimus. Cf.* University of Notre Dame du Lac v. Twentieth Century-Fox Film Corp., *supra;* Damron v. Doubleday, Doran & Co., 133 Misc. 302, 231 N.Y.S. 444 (Sup. Ct., N.Y.Co.1928), aff'd 226 App.Div. 796, 234 N.Y.S. 773 (1st Dep't 1929).

Accordingly, defendants' cross-motion to dismiss the complaint and for summary judgment is granted in all respects, and plaintiff's motion for a preliminary injunction is denied. There being no just reason for delay, the Clerk of the court is directed to enter judgment dismissing the complaint.

So ordered.