**THE SAVAGE IS LOOSE COMPANY, and Campbell Devon Productions, Inc., Plaintiffs,**

v.

**UNITED ARTISTS THEATRE CIRCUIT, INC. and Salah M. Hassanein, Defendants.**

**and**

**George C. Scott, Additional Defendant to Counterclaims.**

**No. 75 Civ. 1326.**

United States District Court, S. D. New York.

March 31, 1976.

551 (1972); *Heiner v. Donnan,* 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932); *Schlesinger v.* *Wisconsin,* 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926).

Arum, Friedman & Katz, New York City, for plaintiffs; Theodore H. Friedman, David G. Miller, New York City, of counsel.

Wachtell, Lipton, Rosen & Katz, New York City, for defendants; Herbert M. Wachtell, Theodore Gewertz, Bertram M. Kantor, Robert B. Mazur, New York City, of counsel.

LASKER, District Judge.

The plaintiffs move for judgment on the pleadings or, in the alternative, summary

judgment, dismissing the defendants' sixth and seventh[1] affirmative defenses and second and third counterclaims.

This action arises out of efforts by the actor George C. Scott, an additional defendant to the counterclaims, to utilize a novel plan to distribute "The Savage Is Loose," a movie he starred in and directed. The plaintiffs are The Savage Is Loose Company ("Company") and Campbell Devon Productions, Inc. ("Campbell"). Scott is the sole shareholder in Campbell which, in turn, is the general partner of Company, the producer and owner of the movie. The defendant is United Artists Theatre Circuit, Inc. ("UATC"), an exhibitor of motion pictures in theatres operated by it throughout the United States. The plaintiffs claim damages of $30,000,000. for UATC's alleged breach of an agreement under which Company licensed UATC to exhibit "The Savage Is Loose" at some of its theatres.

The agreement between UATC and Company, entered into on June 27, 1974, was unusual in several respects. It called for the payment of a "flat" license fee by the exhibitor, a departure from the usual movie industry practice requiring payment of a percentage of gross receipts. The agreement, moreover, eliminated the "middlemen" of movie distribution—usually the major motion picture companies—by direct transaction between the film's producer and the exhibiting theatres. Under the June agreement, Company sold fifty-six prints of "The Savage Is Loose" directly to UATC, and granted UATC the right to exhibit the film at certain theatres in specified territories for the duration of the copyright. In return, UATC was to pay Company a "flat" fee of $685,500.

However, after paying $400,000. of the fee to Company, UATC refused to pay the balance on the ground that Company had allowed Plitt Theatres, another exhibitor of "The Savage Is Loose," to withdraw from an agreement comparable to the arrangement with UATC. (Hassanein Affidavit, Exhibit E).

In March 1975, plaintiffs filed a complaint charging UATC with copyright infringement, breach of contract and conversion of the prints of the movie, and further alleging that UATC and its executive vice-president, Salah M. Hassanein, also a defendant, had conspired to destroy plaintiffs' business. The answer denies the material allegations and sets forth nine affirmative defenses, as well as counterclaims against Company for breach of the agreement, and against Campbell and George C. Scott for inducing the breach of the agreement. UATC and Hassanein have also counterclaimed against Campbell, Company and Scott for defamation, abuse of process and malicious prosecution.

*The Sixth and Seventh Affirmative Defenses*

In these defenses, UATC asserts that the plaintiffs breached an oral agreement to arrange for other exhibitors to show the movie simultaneously with UATC theatres and thereby obtain contributions to the cost of local advertising; by denying UATC an opportunity to participate in the development of an advertising campaign; and by failing to stage a major national publicity campaign, which was to include personal appearances by George C. Scott at certain UATC theatres.

The written agreement, which does not mention these asserted obligations, contains the following provisions:

"12. No modification of this agreement shall be effective unless in writing and duly executed by both of us."

\* \* \* \* \* \*

"15. Entire Agreement: This agreement represents the entire understanding between us. No representations, warranties or promises have been made by either party except as set forth herein."

The plaintiffs, in addition to denying the existence of oral modifications, argue that, since none of the conditions allegedly

---

1. See Reply Memorandum in Support of Plaintiffs' Motion, at 4.

breached are part of the written agreement, both Section 15–301(1) of the General Obligations Law of New York and Section 2–209 of the Uniform Commercial Code [2] prohibit proof of any modification of the agreement unless in a writing signed by the plaintiffs. UATC contends that, by entering into the alleged oral modifications, the plaintiffs waived, or are estopped from asserting, Paragraph 12 of the agreement.

■ We agree that, if plaintiffs did subsequently modify the agreement, and defendant, in reliance on the modification, "change[d] his position to his injury," *Metropolitan Life Insurance Co. v. Childs Co.*, 230 N.Y. 285, 292–93, 130 N.E. 295, 298 (1921), then plaintiffs would be estopped from asserting Sections 12 and 15 of the agreement to bar proof of the breach of the oral modifications as an affirmative defense. We stress that mere proof of oral modifications is insufficient to establish an estoppel; defendants, in order to avoid the stricture of GOL § 15–301(1) must prove that the plaintiffs caused defendants to act in a manner that would not otherwise have occurred but for the plaintiffs' conduct. As stated in *Gray v. Met Contracting Company*, 4 App.Div.2d 495, 497, 167 N.Y. S.2d 498, 501 (1st Dept. 1967):

"Such an estoppel would not be in conflict with section 33–C of the Personal Property Law [predecessor to GOL § 15–301(1)], since it would not constitute an oral modification of a written contract, but the application of an ancient equitable principle whereby a person whose conduct had induced reliance thereon may not thereafter bring an action which is inconsistent with that conduct."

See *Zolar Publishing Co. v. Doubleday & Co.*, 529 F.2d 663 (2d Cir. 1975); *Congress Factors v. Malden Mills, Inc.*, 332 F.Supp. 1384 (D.N.J.1971).

■ Further, Section 2–209 of the Uniform Commercial Code provides in part:

"(2) A signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded . . .

\* \* \* \* \* \*

(4) Although an attempt at modification or rescission does not satisfy the requirements of subsection (2) . . . . it can operate as a waiver." N.Y.U.C.C. § 2–209 (McKinney 1964).

Under subsection (4), an oral agreement between plaintiffs and UATC might operate as a waiver by the parties of the benefits of Section 12 and 15 of the agreement. *See* Official Comment, N.Y.U.C.C. § 2–209 (McKinney 1964). This provision of the UCC is "consistent with former McKinney's Personal Property Law § 33–c(1), now General Obligations Law § 15–301(1)." Buerger and O'Connor, Practice Commentary, N.Y.U.C.C. § 2–209 (McKinney 1964). Thus, the result should not be any different whether the case is governed by the General Obligations Law or the Uniform Commercial Code.

■ The motion, which we regard as one for summary judgment because of the extensive affidavits submitted by the parties, cannot be granted. It is apparent that disputed material issues of fact exist, *i. e.*, whether plaintiffs agreed to an oral modification of the agreement or behaved in such a manner as to have induced UATC's reliance. We observe, however, that the defendants' affidavits as to the specific circumstances of the claimed modifications and reliance are notably undetailed, leaving it open to question whether defendants will ultimately prevail on this point. At this stage of the proceedings, however, defendants are entitled to the opportunity to develop facts to support their affirmative defenses. See *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).

**2.** An interesting question arises as to whether the licensing of a motion picture for distribution is governed by the Uniform Commercial Code. We need not decide this question, however, inasmuch as the result is the same whether the General Obligations Law or the Code applies. *See* Practice Commentary, N.Y.U.C.C. § 2–209 (McKinney 1964).

Accordingly, plaintiffs' motion to dismiss the sixth and seventh affirmative defenses is denied without prejudice to renewal upon completion of discovery as to the material set forth in the sixth and seventh defenses.

### The Second Counterclaim

In this counterclaim, UATC alleges that Scott and Campbell tortiously "interfered with and induced and caused a breach of the June agreement, as amended, and the rights of UATC therein." (Defendants' Memorandum of Law, *quoting* Answer and Counterclaims ¶ 65). Scott and Campbell argue that since Campbell is the general partner of Company, and since Scott is the sole stockholder and an officer of Campbell, the plaintiffs and Scott are members of the same partnership and Scott and Campbell cannot, accordingly, be held liable for inducing Company to breach its contract.

As a general rule, members of a partnership are not liable for inducing it to breach a contract. *Gulickson v. Forest*, 290 F.Supp. 457, 468 (E.D.N.Y.1968); *Braden v. Perkins*, 174 Misc. 885, 22 N.Y.S.2d 144 (Sup.Ct.1940). However, where a partner induces a breach of contract for his own benefit (as distinct from that of the partnership), *Ehrlich v. Alper*, 1 A.D.2d 875, 149 N.Y.S.2d 562 (1st Dept. 1956), or acts in bad faith in inducing the breach, *Felsen v. Sol Cafe Mfg. Corp.*, 24 N.Y.2d 682, 686–87, 301 N.Y.S.2d 610, 249 N.E.2d 459 (1969), he may be held liable. Here UATC alleges that Campbell and Scott, acting "for ulterior purposes wholly divorced from the legitimate interests of plaintiff Company," tortiously induced Company's breach of its contract with UATC (Hassenein Affidavit, ¶¶ 35–36). Since these allegations are denied, there exist issues as to material facts which bar the grant of summary judgment. Accordingly, the plaintiffs' motion to dismiss the second counterclaim is denied.

### The Third Counterclaim

The defendants' third counterclaim charges that plaintiffs and Scott defamed the defendants and have misused this action and a prior action in New York State Supreme Court to coerce UATC into satisfying the plaintiffs' claim for money owed it under the agreement.

The defamation claim arises from the publication in Variety of a news article describing the initiation of the present lawsuit. The article quotes from the complaint and paraphrases comments on the complaint made by Daniel G. Miller, attorney for the plaintiffs, to the Variety reporter. UATC and Hassanein claim that the allegations of the plaintiffs' complaint, "as detailed in the Variety article, are false and untrue and that communication of such allegations to Variety was intended to and did in fact defame defendants and injure and damage their business and trade reputations." (Defendants' Memorandum of Law, at 45). The plaintiffs answer the charge by asserting an absolute privilege under Section 74 of the New York Civil Rights Law, which provides:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y.Civ.Rights L. § 74 (McKinney 1948).

The New York cases interpreting Section 74 have not decided whether the statutory privilege applies to a party to a lawsuit who transmits to a publication defamatory information alleged in a complaint. See *Seltzer v. Fields*, 20 A.D.2d 60, 64, 244 N.Y.S.2d 792, 797 (1st Dept. 1963), *aff'd*, 14 N.Y.2d 624, 249 N.Y.S.2d 174, 198 N.E.2d 368 (1964). We need not decide that interesting question either, since the defendants' alleged behavior is covered by the privilege extended to a party to litigation to allege or write any material pertinent to a lawsuit within the confines of the litigation. *Williams v. Williams*, 23 N.Y.2d 592, 599, 298 N.Y.S.2d 473, 479, 246 N.E.2d 333 (1969); *People ex rel. Bensky v. Warden of City*

*Prison,* 258 N.Y. 55, 59, 179 N.E. 257, 258 (1932); *Perlmutter v. Rivkin,* 33 A.D.2d 809, 305 N.Y.S.2d 429 (3d Dept. 1969); Prosser, *Torts,* § 114, at 778 (4th ed. 1971).

■ It is true that this privilege is subject to limitations. A party who maliciously asserts false and defamatory charges in judicial proceedings for the purpose of publicizing them in the press is not entitled to claim immunity, statutory or otherwise. *Williams v. Williams, supra,* 23 N.Y.2d at 599, 298 N.Y.S.2d at 479, 246 N.E.2d 333. In the present case, however, the plaintiffs' uncontroverted affidavit[3] establishes that the plaintiffs did not seek out Variety for the purpose of publicizing the allegations of the complaint. Rather, a Variety employee assigned to cover the United States District Court for the Southern District of New York noticed the filing of the complaint and informed a Variety reporter. The reporter, who obtained a copy of the complaint, contacted an attorney for the plaintiffs, whose remarks, judging by the content of the article, were confined to repeating the substance of the complaint. Since the plaintiffs' attorney was merely restating the allegations of a complaint that was both privileged and available to the public, no basis for a defamation claim exists.

■ The allegations of the complaint, moreover, appear to be material and pertinent to the lawsuit. All that is needed to claim the privilege is that the alleged defamatory material "may possibly bear on

the issues in litigation now or at some future time." *Seltzer v. Fields,* 20 A.D.2d at 62, 244 N.Y.S.2d at 795–96. Allegations of copyright infringement, conversion, breach of contract and tortious conspiracy are relevant to this lawsuit seeking to recover money damages for the alleged failure to comply with the terms of motion picture exhibition contract. See *Perlmutter v. Rivkin,* 33 A.D.2d at 810, 305 N.Y.S.2d at 431.

Finally, a comparison of the Variety article with the allegations of the complaint makes clear that the publication is a fair and true report of the complaint. See *Edmiston v. Time, Inc.,* 257 F.Supp. 22 (S.D.N.Y.1966). To support the defamation counterclaim, the defendants cite, for example, the statements in the Variety article that UATC "infringed on [Campbell's] copyrights." (Answer, ¶ 71). At paragraph 10, the complaint alleges copyright infringement. The defendants point to the charge in the publication that defendant failed to "live up to the licensing agreement," yet the plaintiffs' third claim for relief asserts that defendant failed to comply with the terms of the licensing arrangement. *Compare, also* Complaint ¶ 20, 26.

■ In their third counterclaim, the defendants also allege abuse of process and malicious prosecution. It is asserted that plaintiffs and Scott's attorneys threatened to sue Hassanein for $10,000,000.; began a State court action which was later terminated by the failure to serve the complaint on the defendant, and initiated the present action; and allegedly disseminated the com-

---

**3.** The defendants argue that a material issue of fact exists as to the circumstances surrounding the publication of the Variety article. Paragraph 42 of the Hassanein affidavit states in part:

"It is my information and belief that Company, Campbell and Scott and their representatives, with malice towards UATC and myself, and for the purpose of further improperly pressuring UATC into paying Company's unfounded claim, communicated the defamatory allegations of their complaint to Variety."

The defendants miss the point. The issue is not the alleged ill will of the plaintiffs and Scott, but whether the entire lawsuit was maliciously instituted for the purpose of dissemi-

nating defamatory material to the press. Significantly, the defendants do not make this claim. As long as the plaintiffs were merely restating to the Variety reporter the allegations of a complaint brought in good faith, no basis for a cause of action in defamation exists. Defendants also argue that this motion should be treated solely as one for judgment on the pleadings inasmuch as the plaintiff failed to file a 9–G statement, required by the rules of this court. However, the plaintiffs did file the required statement in their reply memorandum and since defendants have not alleged surprise or prejudice as a result of the late filing, we accept the 9–G statement.

plaint to Variety. (Hassanein Affidavit, ¶¶ 26, 37–43) In order to maintain a cause of action for malicious prosecution, the alleged malicious lawsuit must have been terminated in favor of the claimant. *Rosemont Enterprises, Inc. v. Random House, Inc.,* 261 F.Supp. 691, 695 (S.D.N.Y.1966); Prosser, *Torts,* § 120, at 853–54 (4th ed. 1971). In this case, of course, the allegedly malicious action begun in State court ended in a dismissal for failure to serve the complaint, while the present litigation has only just begun. In the absence of a termination of either suit in favor of the claimant, defendants' counterclaim is premature. They may not initiate an action for malicious prosecution "until the main suit is terminated in their favor." *Bercy Industries, Inc. v. Mechanical Mirror Works, Inc.,* 279 F.Supp. 428, 429 (S.D.N.Y.1968); see *Rosemont Enterprises, Inc. v. Random House, Inc., supra,* at 691. But see *Herendeen v. Ley Realty Co.,* 75 N.Y.S.2d 836 (Sup.Ct.N.Y.Co.1947).

 Moreover, the facts do not support a cause of action for abuse of process. As the New York courts have repeatedly stated, "[t]he gist of the action for abuse of process lies in the improper use of process after it is issued." *Hauser v. Bartow,* 273 N.Y. 370, 373, 7 N.E.2d 268, 269 (1937), *quoting Dean v. Kochendorfer,* 237 N.Y. 384, 390, 143 N.E. 229 (1924). Here the defendants have failed to allege that the present action has been used for a purpose other than to recover damages for the alleged breach of contract. See Prosser, *Torts,* § 121, at 857–58 (4th ed. 1971). Furthermore, in an action for abuse of process, "there must be an unlawful interference with one's person or property under color of process in order that the action . . . may lie." *Williams v. Williams,* 23 N.Y.2d at 596, 298 N.Y.S.2d at 476–77, 246 N.E.2d at 335. The defendants must demonstrate that they were compelled to give up a legal

right or to do something that was not required of them. *Dorak v. County of Nassau of State of New York,* 329 F.Supp. 497, 501 (E.D.N.Y.1970). The claim of interference with property amounts to the following: (1) no producer has offered to enter into a direct arrangement with UATC similar to the financial arrangement that is the subject of this litigation; (2) prospective creditors demanded a copy of the pleadings; and (3) UATC was compelled to file a Form 8–K with the Securities and Exchange Commission. The claim of interference with property is legally insufficient. The fact that UATC has been unable to repeat its direct deal distribution plan may be attributed to nothing more than the uniqueness of this type of financial arrangement in the movie industry. The other events cited by UATC as interfering with its property are a concomitant of any lawsuit and do not support a cause of action for abuse of process.

Accordingly, plaintiffs' motion to dismiss the third counterclaim is granted.

In sum, we deny the plaintiffs' motion to dismiss the sixth and seventh affirmative defenses and the second counterclaim, and grant the motion for judgment on the pleadings, or, in the alternative, summary judgment, dismissing the third counterclaim.

It is so ordered.