ANN–MARGRET, Plaintiff,

v.

HIGH SOCIETY MAGAZINE, INC. and
Dorjam Publications, Inc., Defendants.

No. 80 Civ. 27 (GLG).

United States District Court,
S. D. New York.

Aug. 27, 1980.

Weil, Gotshal & Manges, New York City, for plaintiff by Robert G. Sugarman, Dwight Yellen, New York City, of counsel.

Ladas & Parry, New York City, for defendants by Robert Alpert, Lawrence E. Abelman, Barry M. Krivisky, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

The actress Ann-Margret is a woman of beauty, talent, and courage.[1] It would appear, from her reaction to her inclusion in the defendants' magazine, that she is also a woman of taste.

In 1978 the plaintiff appeared in the motion picture "Magic," a film in which, for only the second time in her screen career, she appeared in one scene unclothed from the waist up.[2] She states that the decision to disrobe was an "artistic" one, made in light of the script necessities. This film, which was apparently highly successful, was widely distributed and was viewed by millions of persons, both in motion picture theatres and at home on various cable television broadcasts.

The defendants, High Society Magazine, Inc. and Dorjam Publications, Inc., publish a magazine called High Society Celebrity Skin ("Celebrity Skin"), which specializes in printing photographs of well-known women caught in the most revealing situations and positions that the defendants are able to obtain. In view of such content, the plaintiff has attempted to characterize Celebrity Skin as hard core pornography. That description, however, by contemporary stan-

---

1. Plaintiff, who spells her name "Ann-Margret," and not "Ann-Margaret," as it is consistently misspelled in the defendants' magazine, does not use a surname. Ann-Margret was nominated for an Academy Award for her part in "Carnal Knowledge" and has received other awards as an entertainer. In 1972, she fell 22 feet from a stage in Lake Tahoe suffering fractures of five facial bones and her left arm, a concussion, and a broken jaw. Ten weeks la-

ter, she was back on the stage in Las Vegas in a much-heralded act entitled "Ann-Margret: '73."

2. In agreeing to allow herself to be photographed nude, the plaintiff required that a minimum number of persons be present during the filming and that no still photographs be made from the film of the performance.

dards, appears inappropriate.[3] A more apt description would be simply "tacky."

Defendants' first edition of Celebrity Skin, pretentiously subtitled "Special Collector's Edition No. 1," has on its cover a picture of a reasonably well-clothed Ann-Margret. Thereafter, starting on page twenty-five of the magazine, there are five pages devoted exclusively to the plaintiff, four of which are completely photographic, while the fifth is made up of about half a page of rambling text and one photograph. The picture by which the plaintiff is particularly offended, taken from the movie "Magic," is on page twenty-nine. In this photograph, one of her breasts is quite visible.[4] Not having consented to the use of her photographs by the defendants, and, in fact, violently objecting to their inclusion in such a format, the plaintiff has now brought suit, claiming violation of her right of privacy and "right of publicity."[5] The defendants, in turn, have moved for summary judgment.

▇▇▇ The plaintiff's claim rests primarily on section 51 of the New York Civil Rights Law, which provides a cause of action for injunctive relief and damages where a person's name, portrait, or picture is used, without that person's consent, for advertising purposes, or for purposes of trade. This provision, which, if read literally, would provide an extremely broad cause of action applicable to virtually all uses of a person's name or picture, including use by the news media, has been narrowly construed by the courts, especially in the context of persons denominated "public figures," so as "to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest" guaranteed by the First Amendment.

*Time, Inc. v. Hill*, 385 U.S. 374, 382, 87 S.Ct. 534, 539, 17 L.Ed.2d 456 (1967) (quoting *Spahn v. Julian Messner, Inc.*, 18 N.Y.2d 324, 328, 221 N.E.2d 543, 544–45, 274 N.Y. S.2d 877, 879 (1966)). Thus, as has been noted by the New York courts, "freedom of speech and the press under the First Amendment transcends the right to privacy." *Namath v. Sports Illustrated*, 80 Misc.2d 531, 535, 363 N.Y.S.2d 276, 280 (N.Y.Co.1975), *aff'd*, 48 A.D.2d 487, 371 N.Y.S.2d 10 (1st Dep't 1975), *aff'd mem.*, 39 N.Y.2d 897, 352 N.E.2d 584, 386 N.Y.S.2d 397 (1976). *See Rand v. Hearst Corp.*, 31 A.D.2d 406, 298 N.Y.S.2d 405 (1969).

▇▇▇ There is little doubt that the plaintiff, who has starred in numerous movies and television programs over the last decade or so, is, as the term has come to be understood, a "public figure." *See, e. g., Sidis v. F–R Publishing Corp.*, 113 F.2d 806 (2d Cir. 1940); *Gautier v. Pro–Football*, 304 N.Y. 354, 107 N.E.2d 485 (1952); *Namath v. Sports Illustrated, supra; Paulsen v. Personality Posters, Inc.*, 59 Misc.2d 444, 299 N.Y.S.2d 501 (N.Y.Co. 1968); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 58 Misc.2d 1, 294 N.Y.S.2d 122 (N.Y.Co.1968). It is clear that a public figure does not, simply by virtue of his or her notoriety, lose all rights to privacy, *see Galella v. Onassis*, 487 F.2d 986 (2d Cir. 1973) (daily harassment of Jacqueline Onassis and her family by self–styled "paparazzo" held to be an unwarranted intrusion); *Ali v. Playgirl, Inc.*, 447 F.Supp. 723 (S.D.N.Y.1978) (unauthorized *drawing* of the former champion portrayed in the nude, "accompanied by a plainly fictional and allegedly libelous bit of doggerel," *id.* at 727, held to be a violation of plaintiff's right of privacy).[6] Never-

---

**3.** Of course, defendants' endeavors are somewhat limited by their ability to obtain particularly revealing photographs of well-known women.

**4.** Curiously, the plaintiff, compared with many of the other celebrities, who are shown in full-length nudity, is probably the least exposed woman in the magazine.

**5.** Plaintiff's privacy claim is addressed almost entirely to the publication of the one photo-

graph of her partially nude. Her publicity claim is addressed to the publication of all of the pictures used in the magazine.

**6.** It is quite possible that other celebrities included in Celebrity Skin, such as Brigitte Bardot and Greta Garbo, who apparently were photographed surreptitiously by telephoto lens, or Caroline Kennedy, whose photograph, it appears, has been altered, would have potentially stronger claims for relief under section 51.

theless, such rights can be severely circumscribed as a result of an individual's newsworthiness. As noted in *Goelet v. Confidential, Inc.*, 5 A.D.2d 226, 228, 171 N.Y.S.2d 223, 225 (1st Dep't 1958), "[o]nce a person has sought publicity he cannot at his whim withdraw the events of his life from public scrutiny." *See Estate of Hemingway v. Random House, Inc.*, 23 N.Y.2d 341, 244 N.E.2d 250, 296 N.Y.S.2d 771 (1968). As a result, the use of a person's name or picture in the context of an event within the "orbit of public interest and scrutiny," *Meeropol v. Nizer*, 560 F.2d 1061, 1066 (2d Cir. 1977), a category into which most of the events involving a public figure (especially of the plaintiff's stature) fall, can rarely form the basis for an actionable claim under section 51.

The plaintiff in the instant action chose to appear partially nude during one scene in a major motion picture which she knew was to be widely distributed. Upon release, that film, which was highly successful, was seen by millions of persons.[7] It has been held that when an individual consents to be viewed in a certain manner during the course of a public performance, such as in a movie, it cannot then be argued that a subsequent faithful reproduction (no allegation has been made that the picture has been altered) of that appearance constitutes an invasion of privacy. *See Gautier v. Pro-Football, supra; Sherwood v. McGowan*, 3 Misc.2d 234, 152 N.Y.S.2d 658 (N.Y.Co. 1956). *See also Murray v. New York Magazine Co.*, 27 N.Y.2d 406, 267 N.E.2d 256, 318 N.Y.S.2d 474 (1971). As noted in *Sherwood v. McGowan, supra*, "having consented to the exhibition there is no invasion of privacy because not shown to the audience contracted for." 3 Misc.2d at 235, 152 N.Y.S.2d

at 659. *See also Faucheux v. Magazine Management*, 5 Med.L.Rptr. 1697 (E.D.La. 1979); *Man v. Warner Bros., Inc.*, 317 F.Supp. 50 (S.D.N.Y.1970).

▇ Moreover, the fact that the plaintiff, a woman who has occupied the fantasies of many moviegoers over the years, chose to perform unclad in one of her films is a matter of great interest to many people. And while such an event may not appear overly important, the scope of what constitutes a newsworthy event has been afforded a broad definition and held to include even matters of "entertainment and amusement, concerning interesting phases of human activity in general."[8] *Paulsen v. Personality Posters, Inc., supra*, 59 Misc.2d at 448, 299 N.Y.S.2d at 506. *See Sidis v. F-R Publishing Corp., supra*, 113 F.2d at 809. As has been noted, it is not for the courts to decide what matters are of interest to the general public. *See Goelet v. Confidential, Inc., supra*, 5 A.D.2d at 229–30, 171 N.Y.S.2d at 226.[9]

▇ Undoubtedly, the plaintiff is unhappy about the appearance of her picture in the defendants' magazine. And while the Court can sympathize with her feelings, the fact that she does not like either the manner in which she is portrayed, *see University of Notre Dame Du Lac v. Twentieth Century-Fox Film Corp.*, 22 A.D.2d 452, 256 N.Y.S.2d 301 (1st Dep't 1965), *aff'd*, 15 N.Y.2d 940, 259 N.Y.S.2d 832, 207 N.E.2d 508 (1965), or the medium in which her picture is reproduced, *see Goelet v. Confidential, Inc., supra*, and her belief that such reproduction has caused her embarrassment, *see Faucheux v. Magazine Management, supra; Neff v. Time, Inc.*, 406 F.Supp. 858 (W.D.Pa.1976); *Arrington v. New York Times*, 5 Med.L.Rptr. 2581 (Sup.

---

7. The receipts for the film "Magic" are listed as being over $13 million. According to Variety Magazine's annual survey of films, it was the 24th most profitable movie of the year.

8. The defendants are also apparently arguing that the text article about Ann-Margret, by itself, is of legitimate public interest. However, since the rambling text of the article says little, if anything, that is not already widely known and appears to contain quotations attributed to

no particular individual that were probably created by the defendants for this article, such an assertion seems debatable. Moreover, it is questionable whether any "readers" of this magazine ever actually read it.

9. While this Court may believe the concept and content of Celebrity Skin to be unsavory, this does not remove it from the First Amendment's protection.

Ct.N.Y.Co.1980), do not expand her rights or create any cause of action under section 51 of the Civil Rights Law. Where, as in the instant action, there has been a public performance,[10] especially by a public figure, reproduction of that performance in the manner in which it was reproduced here does not give rise to a cause of action under section 51.[11]

Plaintiff's claim fares no better when considered as one for violation of the common law "right to publicity." As has been noted, to the extent that a right to publicity exists at all under New York law, "it does not invest a prominent person with the right to exploit financially every public use of name or picture." *Paulsen v. Personality Posters, Inc., supra,* 59 Misc.2d at 450, 299 N.Y.S.2d at 508. *See Rosemont Enterprises, Inc. v. Random House, Inc., supra.* It is only when such use is made "for advertising purposes, or for the purposes of trade," *Pagan v. New York Herald Tribune, Inc.,* 32 A.D.2d 341, 342, 301 N.Y. S.2d 120, 122 (1st Dep't 1969), that a cause of action arises. And it is well established that simple use in a magazine that is published and sold for profit does not constitute a use for advertising or trade sufficient to make out an actionable claim, even if its "manner of use and placement was designed to sell the article so that it might be paid for and read." *Oma v. Hillman Periodicals, Inc.,* 281 A.D. 240, 244, 118 N.Y.S.2d 720, 724 (1st Dep't 1953). *See Molony v. Boy Comics Publishers,* 277 A.D. 166, 98 N.Y.S.2d 119 (1st Dep't 1950); *Rosemont Enterprises, Inc. v. Random House, Inc., supra; Namath v. Sports Illustrated, supra; see also Pagan v. New York Herald Tribune, Inc., supra.*

In the instant action the defendants did no more than feature the photographs of Ann-Margret, along with the pictures of other well-known women, in a magazine devoted to the publication of such material. A use of this nature simply does not constitute one for trade or advertising purposes. As a result, it may not, either under the common law as it has evolved in New York or under the First Amendment to the United States Constitution, provide the basis for a cause of action for violation of the right to publicity.[12] *See Pagan v. New York Herald Tribune, Inc., supra; Namath v. Sports Illustrated, supra.* Accordingly, that claim must fail.[13]

**10.** The plaintiff has cited *Streisand v. High Society Magazine, Inc.,* No. 79–5132 (S.D.N.Y., filed Sept. 26, 1979), a case in which settlement was reached after entry, without opinion, of a preliminary injunction, in support of her position. The *Streisand* action, however, involved pictures derived from "outtakes" (deleted material) from the film "The Owl and the Pussycat," of which there had never been any public showing. Moreover, unlike the plaintiff in the instant action, one of the plaintiffs in that suit was also the copyright owner of the film. Accordingly, to the limited extent that the *Streisand* case may have precedential value, it is inapposite to the instant action.

**11.** The plaintiff has placed great reliance on a decision rendered in a similar action brought in New York State Supreme Court by high fashion model Patti Hansen. *Hansen v. High Society Magazine, Inc.,* 5 Med.L.Rptr. 2398 (Sup.Ct. N.Y.Co.1980). In that action, the court, apparently without considering either the source of the photographs used (they had been published in advertisements used in Vogue magazine) or the fact of their extremely wide dissemination (both in Vogue and, subsequently, in the Washington Post, where they had been reproduced), found that the plaintiff's rights under section 51 of the Civil Rights Law had been violated, and granted a preliminary injunction. That decision, however, was unanimously reversed "on the law and on the facts" by the Appellate Division of the New York Supreme Court, the court finding on appeal that neither a risk of irreparable harm nor a clearly established right to the relief requested had been demonstrated by the plaintiff. *Hansen v. High Society Magazine, Inc.,* App.Div., 429 N.Y.S.2d 552 (1st Dep't 1980).

**12.** The press may, at times, be trivial, and even obnoxious, but this must be tolerated because of the important part it plays in protecting our liberty.

**13.** In fact, the use made of the plaintiff's picture by the defendants is similar to other uses made of photographs of her in articles published in other periodicals and magazines (such as Playboy magazine). (Defendants have submitted scores of such articles.) Many of these uses have no more merit or news value than does that in defendants' publication.

There being no legal basis for the plaintiff's claims under either section 51 of the New York Civil Rights Law or the common law right to publicity, to the extent that one may exist in New York,[14] the defendants' motion for summary judgment is hereby granted.[15]

Plaintiff, for her part, has moved to dismiss the defendants' three counterclaims, all of which stem from the institution of the underlying action, for abuse of process, prima facie tort, and libel in the pleadings.

 In order to state a cause of action for abuse of process, a claimant must demonstrate both that there has been an improper use of process, such as attachment, execution, or garnishment, which results in "an unlawful interference with one's person or property under color of process," *Williams v. Williams*, 23 N.Y.2d 592, 596, 246 N.E.2d 333, 335, 298 N.Y.S.2d 473, 476–77 (1969); *Dean v. Kochendorfer*, 237 N.Y. 384, 390, 143 N.E. 229, 231 (1924), and that the person activating the process is moved by a purpose to do harm without economic or social excuse or justification. *Board of Education of Farmingdale v. Farmingdale*, 38 N.Y.2d 397, 403, 343 N.E.2d 278, 283, 380 N.Y.S.2d 635, 642 (1975). In this regard, it has been held that a summons and complaint are not process capable of being abused. *See Kalso Systemet, Inc. v. Jacobs*, 474 F.Supp. 666 (S.D.

N.Y.1979). *See also Unitrode Corp. v. Dynamics Corp.*, No. 79–0990 (S.D.N.Y. May 19, 1980). Nor, it has been stated, does "interference" which results in a loss of business, injury to reputation, or expense arising from the litigation, constitute the type of interference with person or property necessary to sustain an abuse of process claim. *Id.; see The Savage is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F.Supp. 555 (S.D.N.Y.1976); *Dorak v. County of Nassau*, 329 F.Supp. 497 (E.D.N.Y. 1970), *aff'd*, 445 F.2d 1023 (2d Cir. 1971).

 In the instant action, the only interference asserted is that there has been harm to the defendants' reputation (whatever that might be). As a result, damages have been claimed for the loss of business that ensued and for the substantial legal costs that have been incurred in defending this action. As just mentioned, however, such claims do not constitute the type of interference with person or property necessary to sustain an abuse of process claim.[16]

 In addition, the defendants allege that the plaintiff abused process not only by instituting this action, but also by issuing an order to show cause and an order to appear at a deposition. Since other victims of the defendants' publications have had at least initial success, *see Hansen v. High Society Magazine, Inc.*, 5 Med.L.Rptr. 2398 (Sup.Ct.N.Y.Co.1980), *rev'd*, App.Div., 429

---

**14.** The defendants have also argued that the plaintiff's claims are preempted by federal copyright law. In view of this Court's determinations as to the other issues presented, however, there is no need to reach this question. Nonetheless, the Court notes its belief that these defendants lack standing to raise the copyright question presented.

**15.** With respect to the motion for summary judgment, plaintiff has tried to suggest that a factual issue, namely whether she impliedly consented to be portrayed in a "pornographic" magazine, remains to be determined. No such issue exists in this case. For the purposes of this opinion, the Court accepts the plaintiff's representation that she did not, even impliedly, consent to having her pictures published in Celebrity Skin. Indeed, the Court does not question her representation that she finds the portrayal abhorrent. Nevertheless, as has been discussed, the plaintiff consented to having the

image of her semi-nude body widely exposed to the general public, and she cannot, under the facts of this case, thereafter complain about the manner in which the media reuse this portrayal.

**16.** In essence, the defendants' claim is really one for malicious prosecution. However, even if the action was instituted by plaintiff maliciously and without probable cause (which is insufficient to show abuse of process where process is used only to accomplish the result for which it was created, see W. Prosser, *Law of Torts* § 121 at 857 (4th ed. 1971)), and thus could sustain a claim for malicious prosecution, such a claim cannot be brought until after a successful termination of the instant action in favor of the defendants. *Hauser v. Bartow*, 273 N.Y. 370, 375, 7 N.E.2d 268, 270 (1937). In the absence of such favorable termination, the counterclaim is premature.

N.Y.S.2d 552 (1st Dep't 1980); *see also Streisand v. High Society Magazine, Inc.,* No. 79–5132 (S.D.N.Y., filed Sept. 26, 1979) (action settled after entry of preliminary injunction), however, it cannot be said that there was no basis for instituting this action.[17]

Defendants' second counterclaim, for prima facie tort, requires proof of the " 'infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful.' " *ATI, Inc. v. Ruder & Finn, Inc.,* 42 N.Y.2d 454, 458, 368 N.E.2d 1230, 1232, 398 N.Y.S.2d 864, 866 (1977) (quoting *Ruza v. Ruza,* 1 A.D.2d 669, 146 N.Y.2d 808, 811 (1st Dep't 1955)). Prima facie tort is a separate cause of action; it is not a " 'catch–all' alternative for every cause of action which cannot stand on its [own] legs." *Belsky v. Lowenthal,* 62 A.D.2d 319, 323, 405 N.Y.S.2d 62, 65 (1st Dep't 1978), *aff'd,* 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E.2d 560 (1979).

In essence, the defendants' allegations underlying their claim for prima facie tort repeat those made in the abuse of process claim. And while there may be instances when the traditional tort causes of action will fail and a plaintiff should be allowed to assert the prima facie tort claim, *Board of Education of Farmingdale v. Farmingdale, supra,* 38 N.Y.2d at 406, 343 N.E.2d at 285, 380 N.Y.S.2d at 645 (1975); *see also Church of Scientology of California v. Siegelman,* 475 F.Supp. 950 (S.D.N.Y. 1979), the defendants have presented the

Court with a clear example of an attempt to use this tort as a "catch-all." Accordingly, the defendants' attempt to categorize its malicious prosecution or abuse of process claim as one for prima facie tort may not succeed.[18]

Defendants' final counterclaim, alleging that the pleadings constitute libel against them, is obviously without merit, as there is a qualified privilege as to pleadings. This privilege allows any party to litigation to allege any material that is pertinent to that lawsuit. *The Savage is Loose Co. v. United Artists Theatre Circuit, Inc., supra,* 413 F.Supp. at 560. It is only when a party maliciously makes false and defamatory charges in a judicial proceeding for the purpose of publicizing them in the press that this immunity is overcome. *Williams v. Williams, supra,* 23 N.Y.2d at 599, 246 N.E.2d at 337, 298 N.Y.S.2d at 479. As the pleadings in this case have not been published outside the action itself, they are absolutely privileged. *The Savage is Loose Co. v. United Artists Theatre Circuit, Inc., supra,* 413 F.Supp. at 561. Accordingly, the counterclaim for libel must also fail.

For the reasons stated, all of the counterclaims are dismissed. Both motions are granted in all respects, and the action is dismissed in its entirety. The clerk will enter judgment.

So ordered.

---

17. To the extent that the counterclaim arises from the refusal of plaintiff to appear in New York for the taking of her deposition, the Court notes that the defendants, upon learning of this, refused to go forward with their own depositions. Moreover, if there was any impropriety in the actions of plaintiff, they are easily recompensable through an award of costs for discovery pursuant to Fed.R.Civ.P. 37(b).

18. In addition, in a claim for abuse of process or prima facie tort, defendants must allege and prove actual or special damages. *Bohm v. Holzberg,* 47 A.D.2d 764, 365 N.Y.S.2d 262 (2d Dep't 1975). Special damages have been defined as "temporal harm in the sense of pecuniary loss," which " 'must be *alleged with sufficient particularity* to identify actual losses and be related causally to the alleged tortious acts' " and " 'must be fully and accurately stated.' " *Kalso Systemet, Inc. v. Jacobs, supra,* 474 F.Supp. at 671 (emphasis added). *See Unitrode Corp. v. Dynamics Corp., supra.* In this regard, defendants have claimed damages of $5 million for harm allegedly caused to their reputation, the encouragement of other third party complaints, and attorneys' fees, and have also claimed punitive damages in the amount of $5 million. They have failed, however, to allege with particularity the actual losses caused by the alleged tortious acts, and have, therefore, not satisfied the requirements for setting out claims for abuse of process or prima facie tort.