WILLIE NELSON MUSIC COMPANY, PETITIONER *V.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

WILLIE H. NELSON AND CONNIE (CONSTANCE) NELSON,
PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket Nos. 1174–85, 1193–85.     Filed December 12, 1985.

*William R. Cousins III*, for the petitioners.
*Stephen M. Miller* and *Marty J. Raisanen* for the respondent.

OPINION

CANTREL, *Special Trial Judge*: These cases are before the Court on petitioners' motions to seal filed in each case on May 16, 1985.[1] They were called for hearing at Washington, D.C. on June 5, 1985, at which time counsel for the parties appeared

---

[1] The cases were assigned pursuant to sec. 7456(c)(4), I.R.C. 1954 as amended, and Delegation Order No. 8 of this Court, 81 T.C. XXV (1983).

and presented argument. At the conclusion of the hearing, the Court took the motions under advisement.

Respondent, in his notice of deficiency issued on October 15, 1984 to Willie Nelson Music Company, petitioner in docket number 1174–85, determined the following deficiencies and additions to tax:

| | | Personal | | Additions to tax, I.R.C. 1954 | | |
| Year | Income tax | holding company tax | Total | Sec. 6651(a)[2] | Sec. 6653(b) | Sec. 6654 |
|---|---|---|---|---|---|---|
| 1972 | $1,288 | $3,198 | $4,486 | $1,122 | 0 | $130 |
| 1973 | 5,333 | 13,234 | 18,567 | 4,642 | 0 | 537 |
| 1974 | 7,610 | 15,250 | 22,860 | 5,715 | 0 | 661 |
| 1975 | 6,387 | 17,443 | 23,830 | 0 | $11,915 | 0 |
| 1976 | 16,589 | 32,268 | 48,857 | 0 | 24,429 | 0 |
| 1977 | 20,145 | 34,964 | 55,109 | 0 | 27,555 | 0 |
| 1978 | 58,396 | 63,972 | 122,368 | 0 | 61,184 | 0 |
| | $115,748 | 180,329 | 296,077 | 11,479 | 125,083 | 1,328 |

Willie Nelson Music Co., a Tennessee corporation, had its principal office in Danbury, Connecticut, on the date its petition was filed.

Respondent, in his notice of deficiency issued on October 15, 1984, to petitioners Willie H. Nelson[3] and Connie Nelson, petitioners in docket number 1193–85, determined the following deficiencies and additions to tax:

| | | Additions to tax, I.R.C. 1954 | |
| Years | Income tax | Sec. 6653(b) | Sec. 6653(a) |
|---|---|---|---|
| 1975 | $259,775 | $141,995 | 0 |
| 1976 | 405,180 | 283,312 | 0 |
| 1977 | 384,389 | 305,290 | 0 |
| 1978 | 465,408 | 0 | $23,270.40 |
| | 1,514,752 | 730,597 | 23,270.40 |

Petitioners in docket number 1193–85 were residents of Austin, Texas, at the time they filed their petition.

On January 15, 1985, petitions in both dockets were filed.[4] On March 15, 1985, respondent filed a motion to extend the time within which to answer. Respondent's motion was granted on March 20, 1985 extending his answer due dates to

---

[2]All section references are to the Internal Revenue Code of 1954 as amended.

[3]Willie H. Nelson is a nationally known country music star.

[4]Both petitions were timely mailed by certified mail on Jan. 11, 1985, and, thus, timely filed. See sec. 7502.

May 20, 1985. On May 16, 1985, petitioners filed identical motions to seal pursuant to Rule 103(a).[5] On May 24, 1985, respondent filed his memorandum of law in opposition to motions to seal. Petitioners filed a reply to respondent's memorandum of law on June 3, 1985.

In their motions to seal, petitioners seek a protective order sealing the entire record of both cases (including but not limited to all pleadings, depositions, exhibits, papers, and filings) to be opened only by order of the Court and directing that the parties and their counsel in these cases be prohibited from disclosing to the media or public the contents of the sealed records. At the hearing, petitioners' counsel modified his motions in requesting that the records be sealed only up to the time of trial.[6]

In support of their motions, petitioners argue that Willie H. and Connie Nelson as nationally known personalities are subject to "intense and continual" scrutiny by the media. The Willie Nelson Music Co. (hereinafter referred to as the company) is wholly owned and controlled by Willie H. and Connie Nelson, and, as a result, the company is also subject to "intense and continual" scrutiny by the media. Petitioners contend that the media coverage has attached undue credibility to respondent's allegations and has resulted in wide publicity and sensationalization. Thus, petitioners assert that they have been seriously and irreparably damaged by the public's impressions. Petitioners maintain that the damage is caused in part by newspaper headlines which indicate that petitioners are subject to criminal prosecution,[7] thus causing petitioners undue embarrassment and considerable emotional distress. Additionally, petitioners urge that, as a result of the publicity, they have been financially injured in that now they are unable to negotiate large up front payments in long-term endorsement contracts.

Respondent opposes petitioners' motions and argues that common law, statutory law, and the Constitution require that the motions be denied.

Our research has failed to disclose any reported Tax Court case where the fraud additions to tax have been determined

---

[5] All Rule references are to the Tax Court Rules of Practice and Procedure.

[6] Indeed, the parties agree that an open trial should be conducted.

[7] There is no criminal case pending against either of the petitioners.

and the record was sealed, nor has any such case been advanced by the parties. Since Rule 103(a) is derived from Rule 26(c), Federal Rules of Civil Procedure, we have looked to decisions interpreting Rule 26(c), Fed. R. Civ. P., for guidance in our decision herein.[8]

Rule 103(a) provides, in relevant part:

### RULE 103. PROTECTIVE ORDERS

(a) Authorized Orders: *Upon motion by a party or any other affected person, and for good cause shown, the Court may make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense,* including but not limited to one or more of the following:

\* \* \* \* \* \* \*

(6) That a deposition *or other written materials*, after being sealed, be opened only by order of the Court.

(7) That a trade secret *or other information* not be disclosed or be disclosed only in a designated way.

(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the Court. [Emphasis added.]

As a general rule, common law, statutory law, and the U.S. Constitution support the proposition that official records of all courts, including this Court, shall be open and available to the public for inspection and copying. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (where a transcript of some 22 hours of tape recordings was furnished to reporters, but, release of Watergate tapes used as evidence in criminal trial to copy, broadcast, and sell denied); *In re Coord. Pretrial Proc. in Pet. Prod. Antitrust*, 101 F.R.D. 34, 38 (C.D.Cal. 1984) ("umbrella" protective order partially lifted and only that material which contained trade secrets or was actually commercially sensitive was to remain subject to protection); *In re*

---

[8]See 60 T.C. 1122–1123 (1973), and Rule 1(a); see also *Espinoza v. Commissioner*, 78 T.C. 412, 415–416 (1982), and cases cited therein. Rule 26(c), Fed. R. Civ. P., which is quite similar to Rule 103(a), recites in pertinent part:

(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, *and for good cause shown,* the court in which the action is pending or alternatively, on matters relating to a deposition, *the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.* \* \* \* [Emphasis added.]

*Mosher*, 45 C.C.P.A. 701, 248 F.2d 956, 959 (1957), and cases cited therein (where the court directed its clerk to provide copies of decision of Patent Office Board of Appeals as set forth in the transcript of record filed in patent appeal); section 7461.[9] However, the right to inspect and copy judicial records is not absolute.[10] *Nixon v. Warner Communications, Inc., supra* at 598–599;[11] *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1179 (6th Cir. 1983).[12]

It is beyond question, and petitioners agree, that this Court has broad discretionary power to control and seal, if necessary, records and files in its possession, and the standard for review thereof is for abuse of discretion. *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 430–434 (5th Cir. 1981);[13] *Nixon v. Warner Communications, Inc., supra* at 598; *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980) (documents claimed to be privileged under the attorney-client privilege and work product immunity doctrine remain under seal); secs. 7458[14]

---

[9]Sec. 7461, appertaining to the publicity of proceedings states, in relevant part—

SEC. 7461(a). GENERAL RULE.—Except as provided in subsection (b), all reports of the Tax Court and all evidence received by the Tax Court and its divisions, including a transcript of the stenographic report of the hearings, shall be public records open to the inspection of the public.
(b) EXCEPTIONS.—
(1) TRADE SECRETS OR OTHER CONFIDENTIAL INFORMATION.—The Tax Court may make any provision which is necessary to prevent the disclosure of trade secrets or other confidential information, including a provision that any document or information be placed under seal to be opened only as directed by the court.

We wish to emphasize that trade secrets are not involved here nor have petitioners advanced that "other confidential information" is involved.

[10]For a general discussion of the public nature of judicial proceedings, see *Ex Parte Drawbaugh*, 2 App. D.C. 404, 406 (1894) (where the court said that the record in its court relating to an appeal is subject to public inspection and exemplification); Wilder, "All Courts Shall Be Open," 52 Temp. L. Q. 311, 337 (1979).

[11]In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978), the Supreme Court provides examples of situations (citing cases) where inspection was not allowed, e.g., where a record disclosed "the painful and sometimes disgusting details of a divorce case" or where opening a record may serve as a reservoir of libelous statements for press consumption.

[12]While acknowledging that the right of access is not absolute, the court in *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165 (6th Cir. 1983), vacated an order sealing documents which was based upon a confidentiality agreement of the parties. The court observed, "This desire, [to shield prejudicial information contained in judicial records] however, cannot be accommodated by courts without seriously undermining the tradition of an open judicial system." *Brown & Williamson Tobacco Corp. v. F.T.C., supra* at 1180.

[13]In *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir. 1981), the court held that the lower court did not abuse its discretion in denying broadcasters access to audiotapes, when that denial was grounded on the right of a yet-to-be tried defendant to a fair trial. We note that *Belo Broadcasting* involved a criminal trial by jury: we have no such factual situation in these cases.

[14]Sec. 7458, respecting hearings provides in salient part—

Hearings before the Tax Court and its divisions shall be open to the public, and the testimony, and, *if the Tax Court so requires*, the argument, shall be stenographically reported. * * * [Emphasis supplied.]

and 7461; Rule 103(a). In the instant cases, to determine whether the sealing of these records in any manner is appropriate, in exercising our discretion, we must weigh the interests of the public, which are presumptively paramount against those advanced by the parties. *Nixon v. Warner Communications, Inc., supra* at 602; *Crystal Grower's Corp. v. Dobbins, supra* at 461; *Coe v. U.S. Dist. Court for Dist. of Colorado,* 676 F.2d 411, 414 (10th Cir. 1982); *In re Agent Orange Product Liability Litigation,* 98 F.R.D. 539, 545 (E.D.N.Y. 1983) (only materials filed in connection with specific summary judgment motions unsealed).

In these cases, members of the public have an interest in free access to the facts and in understanding disputes that are presented to this forum for resolution. They also have an interest in assuring that courts are fairly run and judges are honest.[15] *Coe v. U.S. Dist. Court for Dist. of Colorado, supra* at 414; *Crystal Grower's Corp. v. Dobbins, supra* at 461. Nevertheless, the presumptive right to access may be rebutted by a showing that there are countervailing interests sufficient to outweigh the public interest in access.

For example, where a motion to seal encompasses documents governed by the attorney work-product privilege or the contents of communications subject to the attorney-client privilege, the public interest in protecting those privileges would take precedence over the interest to inspect and copy court records. *In re Agent Orange Product Liability Litigation, supra* at 545, and cases cited therein; *Crystal Grower's Corp. v. Dobbins, supra* at 462. If disclosure of documents would amount to use of the court process for gratification of private spite or public scandal, then the public's interest in its right of access diminishes. *Nixon v. Warner Communications, Inc., supra* at 598, and cases cited therein. Additionally, the constitutional right to privacy in avoiding disclosure of personal matters may outweigh the public's right of access. *Tavoulareas v. Washington Post Co.,* 724 F.2d 1010, 1017–1021 (D.C. Cir. 1984), and cases there cited (where it was held that a corporation had a constitutionally protected privacy interest

---

[15]It is arguable that the right of access to records may be more important than the right to observe the judicial process, because it allows examination of documents, pleadings, and transcripts which portray a more complete picture of the official development and resolution of a case. Wilder, "All Courts Shall Be Open," 52 Temp. L. Q. 311, 338 (1979), and cases cited therein.

in avoiding public disclosure of sensitive commercial information not used at trial of a libel action); *Plante v. Gonzalez*, 575 F.2d 1119, 1132–1137 (5th Cir. 1978), cert. denied 439 U.S. 1129 (1979);[16] cf. *Coe v. U.S. Dist. Court for Dist. of Colorado, supra.*[17]

Public interests are weighed against those advanced by the party seeking the protective order, and, in its discretion, a court may seal the record or portions thereof where justice so requires and the party seeking such relief *demonstrates good cause. American Telephone & Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1979); Rule 103(a). However, a party may not rely on mere conclusory statements or his attorney's unsupported self-serving hearsay statements to establish good cause. *In re Coord. Pretrial Proc. in Pet. Prod. Antitrust, supra* at 44; *Sacks v. Frank H. Lee Co.*, 18 F.R.D. 500, 501 (S.D.N.Y. 1955). In *Sacks*, the court stated that the affidavit of plaintiff's attorney was "an utterly insufficient showing that the testimony sought will betray any secrets."

A party must come forth with appropriate testimony and factual data to support claims of harm that would occur as a consequence of disclosure. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982);[18] *United States v. United Fruit Co.* 410 F.2d 553 n. 11 (5th Cir. 1969) (protective order prohibiting disclosure of divestiture plans upheld where affidavit was supported with numerous examples of harm that would occur upon disclosure). In *Apco Oil Corp. v. Certified Transportation, Inc.*, 46 F.R.D. 428, 432 (W.D. Mo. 1969), the court said, "It is not necessary to add that the burden of proof will rest upon plaintiff at ˉuch a hearing and that the determination of whether good cause does or does not exist must be based upon appropriate testimony and other factual data, *not the unsupported contentions and conclusions of counsel*." (Emphasis supplied.)[19]

---

[16]After comparing the public's interest in access to the plaintiff's right to privacy, the court in *Plante v. Gonzalez*, 575 F.2d 1119 (5th Cir. 1978), opined, inter alia, that mandatory financial disclosure for elected officials is constitutional.

[17]We observe that venue on appeal of docket No. 1193–85, without a stipulation to the contrary (see sec. 7482(b)(2)), lies in the U.S. Court of Appeals for the Fifth Circuit. Sec. 7482(b)(1)(A).

[18]Wyatt involved an action brought for conspiracy to commit libel and slander, where the court said "Courts do not generally grant protective orders without a strong showing of 'good cause.' "

[19]See and compare *Penn-Field Industries, Inc. v. Commissioner*, 74 T.C. 720 (1980), where we granted respondent's motion for protective order on the grounds that a discovery request was "clearly burdensome" and *no evidence* was presented by the opposing party to justify their claim.

Historically, good cause has been demonstrated and records sealed where patents, trade secrets, or confidential information are involved.[20] However, a showing that the information would harm a party's reputation is generally not sufficient to overcome the strong common law presumption in favor of access to court records. "Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations the greater the public's need to know." *Brown & Williamson Tobacco Corp. v. F.T.C., supra* at 1179–1180.

In *Application of Sarkar*, 575 F.2d 870 (C.C.P.A. 1978), a patent application proceeding, the court granted Sarkar's motion to seal the record. The court found that the seal was justified by Sarkar's *showing* that the application contained material constituting a trade secret. Thus, to encourage patent applicants to pursue their rights to patents and provide the public with early disclosure of inventions, the court determined that legitimate trade secrets must be protected. *Application of Sarkar, supra* at 872.

Courts also acknowledge that confidential business information (e.g., pricing information, customer lists, sales volume) requires protection. The rationale in granting protective orders where documents contain this type of information is that if these facts were disclosed, the moving party would suffer great competitive disadvantage and irreparable harm. *Essex Wire Corp. v. Eastern Electric Sales Co.*, 48 F.R.D. 308, 310 (E.D. Pa. 1969) (subject matter of protective arrangement between one defendant and foreign supplier, the release of which would cause great competitive disadvantage, protected); *Doe v. A Corp.*, 709 F.2d 1043 (5th Cir. 1983) (house counsel, after resignation, barred by his ethical obligations as a lawyer from prosecuting litigation as class representative of other employees; case records sealed); *Chesa Intern., Ltd. v. Fashion Associates, Inc.*, 425 F. Supp. 234 (S.D.N.Y. 1977) (protective order issued to protect defendant's competitive position); *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965) (non-party witnesses required to comply with subpoena duces tecum requesting trade secrets relating to price, cost, and

---

[20]Other areas in which courts have granted protective orders are where documents concern national security, law enforcement, and governmental activities. See *Alliance To End Repression v. Rochford*, 75 F.R.D. 431 (N.D. Ill. 1976); *Ronson Corp. v. Liquifin Aktiengesellschaft*, 370 F. Supp. 597 (D.N.J. 1974).

volume of sales of gasoline; however, use thereof for business or competitive purposes proscribed); *Ames Co. v. Bostitch, Inc.*, 235 F. Supp. 856 (S.D.N.Y. 1964) (limited protective order issued).[21] In all these cases access to the protected documents was granted, but the extent to which the parties could use them was limited by the courts. Hence, from these cases it is clear that the paramount concern is to accord the parties access to all relevant and necessary information so that they can adequately prepare their cases without permitting improper or unfair use of the materials produced. See, e.g., *Boeing Airplane Co. v. Coggeshall*, 280 F.2d 654 (D.C. Cir. 1960), which involved three appeals from orders by the District Court on motions relating to a petition to enforce a subpoena duces tecum issued by the Tax Court. Boeing wanted the documents for its own use and the Tax Court's use in a proceeding before the Tax Court under section 108 of the Renegotiation Act of 1951. There the court found that enforcement of the subpoena was warranted, but said the District Court could properly examine in camera individual papers for stated purposes, e.g., privilege, trade secrets.

Courts have not only accorded business entities' "confidential" information protection but have also issued protective orders to protect an individual's confidentiality and right to privacy. *Sendi v. Prudential-Bache Securities*, 100 F.R.D. 21 (D.D.C. 1983); *In re Smith*, 656 F.2d 1101 (5th Cir. 1981); *In re Caswell*, 18 R.I. 835, 29 A. 259 (1893) (where the court in holding that no one has a right to examine or obtain copies of public records from mere curiosity, or for the purpose of creating public scandal, refused to turn over judicial records respecting a divorce). However, these cases bear no resemblance to the instant cases.

In *Sendi v. Prudential-Bache Securities, supra*, the court issued a protective order in which the moving parties' tax returns were filed under seal, and any contents thereof, reflected in the pleadings or memoranda, were also sealed. The court recognized the special privacy and confidentiality interests accorded tax returns and balanced these interests against the need for discovery. See section 6103, respecting confidenti-

---

[21]See *Estate of Gallo v. Commissioner*, T.C. Memo. 1985-363 n. 1, where, upon petitioners' request, we sealed numerous portions of the record consisting of sensitive financial information respecting an entity in a highly competitive industry.

ality of returns and return information. Here, petitioners have no special privacy or confidentiality interest that is protected by statute.[22] In fact, as public figures they may have given up many privacy rights.[23]

The court in *In re Smith, supra,* ordered petitioner Smith's name to be permanently obliterated from records or pleas of guilty and sealed all pleadings, records, documents, and orders to protect Smith's reputation. The *Smith* case arose out of an investigation, by the U.S. attorney's office in Dallas, Texas, of bribery allegations concerning the Army and Air Force Exchange Service (AAFES). Mr. Smith was the head of AAFES. The investigation resulted in more than 25 convictions (none of which involved Smith) involving AAFES employees, Government contractors, and military sales representatives. Two of the Government contractors waived indictment and entered guilty pleas in *United States of America v. Churchill Sales Co.,* Criminal No. CR 3–80–165 (N.D. Tex., Aug. 1, 1980); and *United States of America v. Martin Taylor Co.,* Criminal No. 3–80–198 (N.D. Tex., Sept. 4, 1980). At the *Churchill Sales* and *Martin Taylor* plea hearings, despite the fact no evidence or testimony existed to support her statement, the assistant U.S. attorney read in open court, and filed in the above criminal cases, factual résumés which named Smith as a recipient of payments. After each of the plea hearings in the District Court, the media covering the AAFES bribery scandal reported that Mr. Smith had been paid bribe moneys by various businesses dealing with AAFES.

Following several months of adverse publicity, Smith filed motions in both the above-mentioned criminal cases asking the District Courts to either strike any mention of his name from the résumés and records or to seal the record. These motions were denied. Shortly after these rulings, Mr. Smith notified the personnel division of his intention to retire. Upon retire-

---

[22]Sec. 6103(h)(4)(A) specifically authorizes the disclosure of return information in judicial tax proceedings.

[23]See, e.g., *Ann-Margret v. High Soc. Magazine, Inc.,* 498 F. Supp. 401, 405 (S.D.N.Y. 1980), where the court quoting *Goelet v. Confidential, Inc.,* 5 A.D.2d 226, 171 N.Y.S.2d 223, 225 (1st Dept. 1958), stated "Once a person has sought publicity he cannot at his whim withdraw the events of his life from public scrutiny." See also *Gertz v. Welch,* 418 U.S. 323, 344–345 (1974), where the court noted that public figures make their private lives and affairs matters of public business; *Man v. Warner Bros. Inc.,* 317 F. Supp. 50, 53 (S.D.N.Y. 1970), where the court quoting Hofstadter, Development of the Right of Privacy in New York, said "Those seeking notoriety will be said to have waived, and those having it thrust upon them to have lost, their right to personal seclusion."

ment, Smith was to receive his normal retirement pay commensurate with his employment grade plus an additional retirement annuity because of his participation in the executive management program (EMP). Approval for his retirement was soon acknowledged. Smith's attorney then filed a petition in the Circuit Court of Appeals for the Fifth Circuit seeking a writ of mandamus to compel the District Court to grant the relief requested in the motions. On the same day the writ of mandamus was filed, the Commander of AAFES issued notice to Smith that he was being suspended from the EMP. The only reasons given for the suspension were that Smith had been accused of wrongdoing in the two factual résumés previously discussed. After several months of AAFES administrative actions, amended and additional motions, and several orders entered by the administrative panel of the Circuit Court, the status of Smith remained essentially as it was on the day he retired, he had been retired with his regular retirement but his EMP benefits were being held in abeyance pending further AAFES proceedings. Thus, Smith showed that he suffered actual financial injury. The Court of Appeals granted the petition for writ of mandamus and noted at page 1107—

The presumption of innocence, to which every criminal defendant is entitled, was forgotten by the Assistant United States Attorney in drafting and reading aloud in open court the factual resumes which implicated [Smith] in criminal conduct without affording him a forum for vindication.

Accordingly, we find the inclusion of Mr. Smith's name in the factual resumes were [sic] a violation of his liberty and property rights guaranteed by the Constitution and hold that [Smith's] motions to strike and seal should have been granted in the proceedings below.

*In re Smith, supra,* is distinguishable from the instant cases in that it arose out of a criminal case in which Smith was not a party and therefore was not able to testify on his behalf or given an opportunity to rebut the charges. In fact, Smith was not indicted on any bribery charge and the accusations made by the assistant U.S. attorney were totally unwarranted and without support. What is of significance here is that Smith *demonstrated* he suffered actual financial injury subsequent to the denial of his motions and that he had been subject to adverse publicity. Petitioners have totally failed to make such

a showing.[24]

Furthermore, petitioners have not demonstrated any harm (financial or otherwise) that they have suffered or will suffer if their motions are denied; their contentions are wholly unsupported by the record. Petitioners are correct when they argue that Rule 103(a) permits this Court, in its discretion, to seal its records including pleadings to protect a party from embarrassment or harassment.[25] Nevertheless, merely asserting annoyance and embarrassment is wholly insufficient to demonstrate good cause.

We have carefully studied the thirty-seven newspaper articles submitted on petitioners' behalf at the hearing.[26] All of them were published in Texas newspapers in February 1985: twelve of the articles were published on February 6, twenty-two on February 7, two on February 8 and one on February 9.[27] None of them, in our opinion, even remotely suggest that petitioners are subject to criminal prosecution, albeit thirty-one of the articles report that Willie Nelson has been accused of *civil tax fraud*. Twenty-six articles report that petitioners' counsel, who is one of petitioners' counsel in these cases, was contacted and his replies were to the effect that it is believed the IRS position is grossly exaggerated, petitioner is certainly not guilty of any fraud, we expect to prevail in the litigation, or since the matter is in the courts we will let it be resolved there.[28] On the whole, we think the articles gave a factual report on petitioners' tax situation and, in fact, emphasized petitioners' claims that all of the deficiencies and additions to

[24]In fact, petitioners have not been subject to adverse publicity and are in an enviable position whereby, they can utilize the media for their benefit by simply issuing a news release or calling a press conference.

[25]See generally *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) (motion for protective order granted upon a showing that constituted *good cause* involving a religious foundation, its members, clients, and donors); *Parsons v. General Motors Corp.*, 85 F.R.D. 724 (N.D. Ga. 1980) (motion for protective order to have portion of pleadings filed under seal denied because *good cause* not shown); *Grinnell Corp. v. Hackett*, 70 F.R.D. 326, 334 (D.R.I. 1976) (where magistrate's order issuing protective order to shield deponents from annoyance, embarrassment, and oppression was vacated because "A showing that the likelihood of harrassment is 'more probable than not' is in [the court's] view insufficient" to warrant the issuance of a protective order); *Zwack v. Kraus Bros. & Co.*, 237 F.2d 255 (2d Cir. 1956) (where protective order granted regarding information that would have jeopardized the life of another).

[26]These articles were received in evidence.

[27]As recited earlier, the petitions were filed on Jan. 15, 1985.

[28]It appears that the majority of these articles were published *after* this contact with petitioners' counsel.

tax are in controversy and that no part of any underpayment is due to fraud.

Petitioners further claim that the publications they submitted have caused the public to question Willie Nelson's availability for performances in light of "potential criminal prosecution." Petitioners did not show one instance where this happened. In fact, since the filing of the petitions, Willie Nelson has performed at the Merriweather Post Pavillion in Maryland; appeared in Plains, Georgia, to help former President and Mrs. Carter celebrate Plains' 100th Birthday; performed at his annual July 4 picnic in Austin, Texas; and performed 5 nights at New York City's Radio City Music Hall. On *May 6, 1985*, Willie Nelson won the Academy of Country Music's single record of the year award for "To All The Girls I Loved Before," which he sang with Julio Iglesias. If anything, in our view, Willie Nelson's popularity and desirability as a performer has remained intact, if not, increased.[29]

We think a few final observations are in order. Attached to each petition is a full copy of the statutory notice of deficiency, which lists all of respondent's determinations. The petitions on file contest all of those determinations and in the appropriate portions thereof "facts" are alleged.[30] Respondent, *in his yet to be filed answers*, must set forth facts to sustain his determinations under section 6653(b), the burden of proof for which is placed upon him. Sec. 7454(a) and Rules 36(b) and 142(b).[31] Thereafter, petitioners may file replies controverting respondent's answers wherein they shall set forth "a clear and concise statement of every ground, together with the facts in support thereof, on which the petitioner relies affirmatively or in avoidance of any matter in the answer on which the Commissioner has the burden of proof." See Rule 37(b). Moreover, trials before this Court "shall be conducted in accordance with such rules of practice and procedure * * * as the Tax Court may prescribe and in accordance with the rules of evidence applicable in trials without a jury in the U.S.

---

[29]Another indication of Willie Nelson's continuing popularity is that from March through June of 1985 he had a song in the top twenty country and western singles based upon sales and broadcasts as reported in Billboard Magazine's publications for those months.

[30]In our judgment, those "facts" are nothing more than conclusions. See Rule 34(b)(5).

[31]Hence, petitioners' exhortations that they will be injured on the basis of unproven allegations in the answer are premature.

District Court of the District of Columbia."[32] See sec. 7453 and Rule 143(a).

On these records, after exhaustive analysis and research, we find and hold that petitioners have demonstrated no probative evidence of good cause sufficient to outweigh the public interests. The possibility that petitioners' status as nationally known entertainers may cause these cases to gain some notoriety is not a compelling enough reason to seal these records up to the time of trial. See *U.S. v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981). Since good cause has not been demonstrated, petitioners' motions will be denied.

To reflect the foregoing,

*Appropriate orders will be issued.*

---

[32]We mention this to emphasize that the concern for an "impartial jury" is not a legitimate concern in Tax Court proceedings. Cf. *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423 (5th Cir. 1981).