ESTATE OF ELIZABETH B. MURPHY, DECEASED, FIRST BANK (NATIONAL ASSOCIATION)-DULUTH AND RICHARD R. BURNS, AS CO-PERSONAL REPRESENTATIVES AND CO-TRUSTEES UNDER AGREEMENT WITH ELIZABETH B. MURPHY, DATED FEBRUARY 3, 1981, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Murphy v. Commissioner
Docket Nos. 32730-86, 32731-86
United States Tax Court
T.C. Memo 1990-346; 1990 Tax Ct. Memo LEXIS 358; 60 T.C.M. (CCH) 73; T.C.M. (RIA) 90346; July 10, 1990, Filed *358 This matter is before the Court on P's motion to seal the trial record. The underlying issue is the valuation, for gift and estate tax purposes, of stock held by the decedent in the Evening Telegram Company and Television Wisconsin, Inc. Beginning after her husband's death in 1971, decedent owned a controlling interest (51.41 percent) through a general power of appointment in the Evening Telegram Company. The Evening Telegram Company is a family-run, closely held corporation which owned subsidiaries that published newspapers and operated television stations. Several experts for both parties testified regarding the value of the stock. The record in these cases contains detailed financial information for 1979 through 1982. Held: The record will not be sealed after trial where the documents sought to be sealed are used by the experts in estimating the decedent's interest in the companies, and where the age of the documents diminishes their importance. Raymond L. Erickson, and Richard R. Burns, for the petitioner. Jack Forsberg, for the respondent. COLVIN, Judge. COLVIN
MEMORANDUM OPINION This matter is before the Court on petitioner's motion to seal selected parts of the record. *359 The underlying issue in the case is the valuation, for gift and estate tax purposes, of stock held by the decedent in two family-owned businesses, the Evening Telegram Company and Television Wisconsin, Inc. Respondent determined a deficiency in estate tax of $ 8,133,984 and a deficiency in gift tax for the calendar year 1982 of $ 10,248,403. Both deficiency notices result from a dispute concerning the valuation of a 51.41 percent block of stock over which decedent had a general power of appointment from 1971 until 1982. The gift tax deficiency notice relates to decedent's gift of .88 percent of that stock to each of her two children shortly before her death. The estate tax deficiency relates to decedent's testamentary bequest of her remaining 49.65 percent to trusts established for her two children. The issue for decision raised by petitioner's motion is whether selected parts of the record should be sealed. Petitioner asks us to seal parts of the record on the grounds that it contains sensitive commercial information which, if disclosed to the public, would result in competitive disadvantage and harassment. Petitioner asks that the exhibits identified in the next four paragraphs *360 be sealed. A. The exhibits to the Supplemental Stipulation of Facts, Joint Exhibits 28-AC through 47-AV, and the expert reports of Warren Randy, Exhibit 50, and John Hurlbut, Exhibits 54 and 55. Joint Exhibits 28-AC through 47-AV are the Financial Statement and Auditors Report for 1979, 1980, and 1982 for: (1) the Evening Telegram Company (consolidated and parent company); (2) Television Wisconsin, Inc.; (3) Apple Valley Broadcasting, Inc.; (4) Spokane Television, Inc.; (5) Ashland Publishing Corporation; (6) HTC, Inc.; and (7) WPC, Inc. B. The expert reports of Joseph Sitrick, Exhibit 51, especially pages 5, 7, 11, 14, and 17; James Cerone, Exhibit 53, pages 13, 16, and 23; and William Cate, Exhibit AY, pages 14, 17, 19, and 23. C. Balance sheets for the broadcast companies, Exhibit 48-AW and publishing companies, Exhibit 49-AX. D. Alexander Grant tax planning memo dated 5/9/79, Exhibit 11-K; and estate planning letters from Warren Randy to the decedent, Exhibits 12-L and 14-N; and the expert report of Robert Leonhardt, Exhibit 52. Petitioner describes these exhibits as less detailed, but asserts they may be useful to competitors. Respondent contends the entire record should *361 be opened or, alternatively, that only the exhibits in paragraph A, above, should be sealed. As discussed below, we hold that the record and exhibits should not be sealed after trial where the documents sought to be sealed were admitted into evidence and used by the experts to estimate the value of decedent's interest in the companies, and the age of the document diminishes their importance. We temporarily sealed the record at trial to ensure that confidentiality was preserved until the motion was decided, and ordered that the issue be briefed. See In re Knight Publishing Co., 743 F.2d 231, 235 n.1 (4th Cir. 1984); Publicker Industries, Inc. v. Cohen, 733 F.2d 1059, 1073 (3d Cir. 1984). To protect petitioner's interest, our order will remain in effect during the period that the case is in our jurisdiction, e.g., until an appeal is made or the time to appeal has passed. FINDINGS OF FACT Elizabeth B. Murphy (decedent) died testate on August 16, 1982. Under the will, First Bank-Duluth and Richard R. Burns were the personal representatives of the decedent's estate. First Bank-North is now the successor in interest to First Bank-Duluth and Northern City National Bank of Duluth. At the *362 time these petitions were filed, Richard R. Burns resided in Duluth, Minnesota, and First Bank-North was a corporation with its principal place of business at Duluth, Minnesota. The Evening Telegram Company was incorporated in Wisconsin in 1897 by J. T. Murphy, the decedent's father-in-law. It published the Evening Telegram newspaper and conducted a general printing business. The Evening Telegram Company is authorized to acquire, own, sell, lease, or operate radio and television stations and related property. The decedent's husband, Morgan Murphy, succeeded his father as president of the Evening Telegram Company. He became involved in radio broadcasting and later in television broadcasting. The Evening Telegram Company brought radio to Duluth, Minnesota, and Superior, Wisconsin, in 1926. Morgan Murphy developed or acquired all of the Evening Telegram Company's current broadcast and newspaper facilities prior to his death on February 6, 1971. Morgan Murphy died testate. Prior to his death, he held all of the outstanding shares of the Evening Telegram Company. His will established a marital trust for decedent and a residuary trust for their two children. The Evening Telegram *363 Company shares held by Morgan Murphy were passed to the trusts under the terms of the will. The decedent was given a general power of appointment over the assets of the marital trust. The marital trust's principal asset was a 51.41 percent controlling block of stock of the Evening Telegram Company. The decedent was born on May 21, 1906. She and her husband, Morgan Murphy, had two children, Elizabeth Burns (formerly Elizabeth Schirmer), born December 4, 1945, and John Murphy, born April 30, 1948. The decedent became the president of the Evening Telegram Company in 1971. She desired to continue the entire operation, and wanted it eventually to be owned and managed by her children. She was also chairman of the board of directors in 1980 when her son, John Murphy, became president of the Evening Telegram Company, and her daughter Elizabeth Burns was made vice president. Elizabeth Burns also became president of the broadcast subsidiaries in 1981. The decedent remained chairman of the board until her death in 1982. As of August 16, 1982, the Evening Telegram Company of Superior, Wisconsin, published the Evening Telegram newspaper and operated a commercial printing division. The *364 remainder of the Evening Telegram Company's communications operations were carried on through subsidiary corporations publishing newspapers or operating broadcast stations as follows: Corporate Entity
Location
Paper/Station
H.T.C., Inc.
Hibbing, Minnesota
Hibbing Tribune
Ashland Publishing Corp.
Ashland, Wisconsin
Daily Press
Spokane Television, Inc.
Spokane, Washington
KXLY-TV
Fargo, North Dakota
KTHI-TV
Spokane Radio, Inc.
Spokane, Washington
KXLY-AM-FM
Apple Valley
Yakima, Washington
KAPP-TV
Broadcasting, Inc.
Kennewick, Washington
KVEW-TV
Television Wisconsin, Inc.
Madison, Wisconsin
WISC-TV The Evening Telegram Company owned 100 percent of the common stock of all of these companies, except for Apple Valley Broadcasting, Inc., in which it held 86.8 percent of the stock at the decedent's death, and Television Wisconsin, Inc., in which it then held 84.4 percent of the stock. Television Wisconsin, Inc., established in 1956, operated the VHF television station WISC-TV in Madison, Wisconsin. In 1982, it became a CBS network affiliate. Spokane Television, Inc., also held 100 percent of the common stock of Spokane Radio, Inc. Before the trial, petitioner provided an affidavit made by Elizabeth M. Burns. After *365 a hearing, and our review of the motion, the affidavit, and the entire record, we believe the following facts are not reasonably in dispute. Detailed asset, profit and loss, and operating expense (including advertising, circulation, program and film costs, salaries and wages) information about the companies was provided to respondent and was admitted into evidence. It also included, for example, a projected financial statement through 1992 for the Evening Telegram Co. prepared by an expert at the trial, Mr. Cerone. This information is the subject of petitioner's motion. The communications industry is typically highly competitive, and its participants are interested in acquiring financial data and reports of competitors. The decedent's companies' business records, identified in paragraph A above, have not previously been disclosed to third parties, except confidentially to a bank in connection with a stock redemption. It has been the practice and policy of the companies not to disclose intracompany financial information to the general managers at each location, except the information for the managers' own station or newspaper. Decedent's two children have received many expressions *366 of interest from brokers and others in buying one or more of the publishing or broadcasting companies. OPINION All reports of the Tax Court and all evidence received by the Tax Court, including a transcript of the stenographic report of the hearings, are open to the inspection of the public. Section 7461(a). [1] However, we may make any provision which is necessary to prevent disclosure of trade secrets or other confidential information, including to order that documents or information be sealed, to be opened only as directed by the court. Section 7461(b)(1). Rule 103(a) provides in pertinent part as follows: Upon motion by a party or any other affected person, and for good cause shown, the Court may make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense, including but not limited to one or more of the following: * * * (6) That a deposition or other written *367 materials, after being sealed, be opened only by order of the Court. (7) That a trade secret or other information not be disclosed or be disclosed only in a designated way. (8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the Court
Rule 103 is derived from Rule 26(c), Federal Rules of Civil Procedure, and decisions interpreting the latter provide guidance interpreting the former. Willie Nelson Music Co. v. Commissioner, 85 T.C. 914, 917 (1985). Generally, official records of all courts, including the Tax Court, are open to the public for inspection. Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 567-68 (1980); Gannett Co. v. DePasquale, 443 U.S. 368, 386, n.15 (1979); Publicker Industries Inc. v. Cohen, 733 F.2d 1059, 1070 (3d Cir. 1984); Willie Nelson Music Co. v. Commissioner , supra at 917.The interests of the public to this right of access to judicial proceedings and to judicial records is presumptively paramount. Willie Nelson Music Co. v. Commissioner, supra at 919; see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. 866, 902 (E.D. Pa. 1981).
However, this Court *368 also has broad discretionary power to control, and seal, if necessary, records and files in our possession, Willie Nelson Music Co. v. Commissioner, supra at 918.The presumptive right to access may be rebutted by a showing that there are countervailing interests sufficient to outweigh the public interest in access. Willie Nelson Music Co. v. Commissioner, supra at 919. Petitioner has the burden of proving it is entitled to such protection. Willie Nelson Music Co. v. Commissioner, supra at 920. To carry this burden, petitioner must establish (1) that the material is the type of information that the courts will protect, and (2) that there is good cause for protection. Publicker Industries, Inc. v. Cohen, 733 F.2d at 1071.In Willie Nelson Music Co. we said: Public interests are weighed against those advanced by the party seeking the protective order, and, in its discretion, a court may seal the record or portions thereof where justice so requires and the party seeking such relief demonstrates good cause.
Willie Nelson Music Co. v. Commissioner, supra at 920 (emphasis in original). Good cause is established on proof that the disclosure of particular financial information will cause *369 a specific and clearly defined serious injury, great competitive damage, and irreparable harm. Publicker Industries, Inc. v. Cohen, supra at 1071.We have said: Historically, good cause has been demonstrated and records sealed where patents, trade secrets, or confidential information are involved. * * * [Fn. ref. omitted.] The rationale in granting protective orders where documents contain [confidential business] information is that if these facts were disclosed, the moving party would suffer great competitive disadvantage and irreparable harm. * * * [Willie Nelson Music Co., supra at 921.]
Another court has said: "Frequently the injury that would flow from disclosure is patent, either from consideration of the documents alone or against the court's understanding of the background facts. The court's common sense is a helpful guide." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., supra at 891. The party must produce "appropriate testimony and factual data" to establish that harm would flow from disclosure. Wyatt v. Kaplan, 686 F.2d 276, 283 (5th Cir. 1982); Estate of Yaeger v. Commissioner, 92 T.C. 180, 189 (1989).That information must consist of more than merely conclusory or *370 unsupported statements. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 101 F.R.D. 34, 44 (C.D. Cal. 1984); Estate of Yaeger, supra."[T]he injury which allegedly will result must be shown with specificity, and * * * conclusory statements to this effect are insufficient." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. at 891. Sensitive financial information is generally an example of the type of information which has been protected by courts. See, e.g., Vollert v. Summa Corp., 389 F. Supp. 1348 (D. Hawaii 1975) (financial records containing information regarding corporation's capital, net worth, and net income); Corbett v. Free Press Association, 50 F.R.D. 179 (D. Vt. 1970) (net profit data); Hecht v. Pro-Football Inc., 46 F.R.D. 605 (D. D.C. 1969) (financial statements). In Estate of Hall v. Commissioner, 92 T.C. 312, 322 (1989), by agreement of the parties and order of the Court, numerous portions of the record involving sensitive financial information were sealed at the taxpayer's request. In Estate of Gallo v. Commissioner, T.C. Memo. 1985-363, at n.1, a similar order was issued at the taxpayer's request. The Court found *371 that the company "maintained a policy against public disclosure of financial information * * *," and that as of the valuation date the company "has never made available to the public financial information concerning [it] or its subsidiaries." Estate of Gallo v. Commissioner, 54 P-H Memo T.C. par. 85,363 at 1591, 50 T.C.M. 470, 471. Here, posttrial protection is sought, and the documents which would be sealed were admitted into evidence, and relied on by the experts to estimate the value of decedent's interest in the companies. In contrast, in most of the cases on which petitioner's rely, the issue was whether, before trial, to seal information obtained during discovery. In Zenith Radio Corp. v. Matsushita Elec. Indus. Co., supra, the court distinguished between protective orders for discovery materials and orders sealing documents which are admitted into evidence and which are the basis for the Court's decision. The court in Zenith Radio stated: We think that the courts have an obligation to explain their decisions that is correlative to the public's common law access rights. [Fn. ref. omitted.] The core function of the right to inspect and copy judicial records can only be served *372 by the release in full of documents that are the basis of a dispositive ruling. Unlike the documents at issue in [United States v.] Hubbard [650 F.2d 293 (D.C.Cir. 1980)], the release of which the District of Columbia Circuit found would not significantly increase public understanding of that case, see650 F.2d at 317-18, the disclosure of documents relied on by the court often may be critical to a proper evaluation of the decision.
Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. at 901.Thus, the public has a common law right of access to trial exhibits which are the basis for the court's ruling, but not "to inspect materials that are produced in discovery but not placed in the custody of the court." Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 529 F. Supp. at 898; see also In re the Reporters Committee for Freedom of the Press, 773 F.2d 1325 (D.C. Cir. 1985).The court in Zenith Radio concluded that notwithstanding the considerable amount of sensitive commercial information, the strong presumption of public access outweighed the lesser interest of confidentiality. In re the Reporters Committee for Freedom of the Press, supra, also involved the difference between *373 protecting against disclosure of discovery materials and parts of the record upon which the decision is based. Respondent further contends that the information for which protection is sought in this case is stale because of its age, primarily covering 1979-1982. In Zenith Radio Corp. v. Matsushita Elec. Indus. Co., supra, protection was not automatically barred due to age for commercial and technical information 10 to 20 years old. On the other hand, in United States v. International Business Machines Corp., 67 F.R.D. 40, 48-49 (S.D.N.Y. 1975), protection was denied to 3 to 15-year-old information in part because it was stale. Respondent's expert, Mr. Hurlbut, said that older information such as that which is involved here is not very helpful to a competitor, and that he has viewed three to five-year-old information in a competitive sense. He said he could not remember a specific instance of using six-year-old information, but he would not rule out that he has done so. We believe that the age of the documents here decreases their importance to any potential user, whether a competitor or an employee of one of the companies. Decedent's family members are concerned that they may receive *374 an increased number of expressions of interest in buying one or more of their publishing or broadcasting companies, but we do not believe this is the type of intrusion which would justify sealing this record. On balance, we believe that the public interest in maintaining public judicial proceedings outweighs the interest here in sealing the record. We conclude that petitioners are not entitled to protection of portions of this financial data, but are entitled to have confidentiality preserved in the event they wish to appeal this ruling. An appropriate order will be issued. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect at the time of decedent's death, unless otherwise indicated. All rule references are to the tax Court Rules of Practice and Procedure, unless otherwise indicated.↩