T.C. Memo. 2014-92

UNITED STATES TAX COURT

WHISTLEBLOWER 11332-13W, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11332-13W.                    Filed May 20, 2014.

<u>Sealed</u>, for petitioner.

<u>Sealed</u>, for respondent.

MEMORANDUM OPINION

KROUPA, <u>Judge</u>:  This case is before the Court on the whistleblower's

motion to seal and the whistleblower's motion to proceed anonymously under

[*2] Rule 345(a).[1] [2] The whistleblower has demonstrated that sealing the record is appropriate in this circumstance because failure to do so could result in severe physical harm to the whistleblower. The whistleblower has also demonstrated that proceeding anonymously is necessary to protect the whistleblower's professional reputation, economic interests and personal safety. We will grant both motions.

## Background

The following information is stated only for purposes of resolving the pending motions and not for purposes of establishing the validity of the whistleblower's claim.

Petitioner is a whistleblower that reported a tax fraud scheme to the Government. During the whistleblower's employment, the whistleblower learned of a tax structure involving the whistleblower's employer and several related entities and subsidiary companies (targets). When the whistleblower raised concerns over the tax structure to the whistleblower's employer, the whistleblower's employer used physical force and armed men to intimidate the

---

[1]The Court is issuing this Memorandum Opinion because there is a lack of whistleblower caselaw.

[2]All section references are to the Internal Revenue Code in effect for all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. All amounts are rounded to the nearest dollar.

**[*3]** whistleblower and prevent disclosure. The whistleblower was subsequently fired. The whistleblower reported the tax scheme to the Government and for several years assisted the Government in its investigation of targets. Based partly on the whistleblower's information, the Government eventually recovered more than $30 million in taxes, penalties and interest.

The whistleblower filed a Form 211, Application for Award for Original Information, on February 4, 2008 and submitted to the IRS Whistleblower Office (Whistleblower Office) documentary evidence related to the targets' actions the whistleblower disclosed. Subsequently, the whistleblower resubmitted Form 211 on August 12, 2011, seeking an award under section 7623(b). The Whistleblower Office sent the whistleblower an award determination under section 7623(a). The whistleblower filed the petition seeking judicial review of the Whistleblower Office section 7623(a) award determination.

Throughout the investigation Government investigators warned the whistleblower that the targets and individuals the whistleblower reported were dangerous and were linked to violent events and terrorist organizations. Indeed, the whistleblower alleges that over the last 10 years at least one person who reported alleged wrongdoing against one of the targets was killed under suspicious circumstances. After learning that the whistleblower was subpoenaed to provide

[*4] documents to the Government, targets filed multiple retaliatory actions against the whistleblower to determine the whistleblower's role in the investigation and to silence the whistleblower. The whistleblower incurred significant personal expense, spent time and suffered professional reputational costs defending against these actions that were designed to intimidate and threaten the whistleblower.

The whistleblower has also received significant physical threats. The whistleblower received a death threat from the targets, communicated through their counsel. After learning of the individuals and entities involved, the Government offered to place the whistleblower in the witness protection program. The whistleblower declined placement in the witness protection program, but requested and was granted confidential informant status. The whistleblower was also forced to hire counterterrorism experts to advise the whistleblower's family on safety and protect the whistleblower on trips abroad. This protection cost the whistleblower tens of thousands of dollars. Despite their efforts, targets have not discovered the identity of the whistleblower. They were aware only that the whistleblower was subpoenaed by the Government.

**[*5]** The whistleblower filed the motion to seal and the motion to proceed anonymously at the same time the whistleblower filed the petition. Respondent filed notices of no objection to both motions.

Discussion

We are asked to decide whether the docket record in this case should remain sealed and whether the whistleblower should be permitted to proceed anonymously. We begin by describing the general presumption of openness that attaches to judicial proceedings. Generally, official records of all courts shall be open and available to the public for inspection and copying. Nixon v. Warner Commcns., Inc., 435 U.S. 589, 597 (1978); In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 101 F.R.D. 34, 38 (C.D. Cal. 1984). Hearings and the evidentiary record of proceedings before this Court shall be open to the public. Secs. 7458, 7461(a). Common law, statutory law and the U.S. Constitution all support this important principle. Warner Commcns., Inc., 435 U.S. at 597; Willie Nelson Music Co. v. Commissioner, 85 T.C. 914, 917 (1985); In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 101 F.R.D. at 38. The right to inspect and copy judicial records, however, is not absolute. Warner Commcns., Inc., 435 U.S. at 598. Courts have supervisory

**[\*6]** power over their own records and files and courts have denied access to records where the court files might become a vehicle for improper purposes. Id.

Sealing the Record

This Court has broad discretionary power to control and seal, if necessary, records and files in our possession. Willie Nelson Music Co. v. Commissioner, 85 T.C. at 918. We may, in our discretion, seal the record or portions of the record if justice so requires and the party seeking such relief demonstrates good cause. Sec. 7461(b)(1); Rule 103(a); AT&T Co. v. Grady, 594 F.2d 594, 596 (7th Cir. 1978); Willie Nelson Music Co. v. Commissioner, 85 T.C. at 920; Tavano v. Commissioner, T.C. Memo. 1991-237, aff'd, 986 F.2d 1389 (11th Cir. 1993). To determine whether sealing the record is appropriate, we must weigh the presumption, however gauged, in favor of public access to judicial records against the interests advanced by the parties. Warner Commcns., Inc., 435 U.S. at 602; AT&T Co. v. Grady, 594 F.2d at 596; Willie Nelson Music Co. v. Commissioner, 85 T.C. at 919.

Taxpayers seeking to seal court records must come forward with appropriate testimony and factual data to show good cause. United States v. United Fruit Co., 410 F.2d 553, 557 n.11 (5th Cir. 1969); Estate of Yaeger v. Commissioner, 92 T.C. 180, 189 (1989); Willie Nelson Music Co. v. Commissioner, 85 T.C. at 920

**[\*7]** (citing <u>Wyatt v. Kaplan</u>, 686 F.2d 276, 283 (5th Cir. 1982)); <u>Tavano v. Commissioner</u>, T.C. Memo. 1991-237.  Taxpayers may not rely on conclusory or unsupported statements to establish claims of harm that would result from disclosure.  <u>Willie Nelson Music Co. v. Commissioner</u>, 85 T.C. at 920; <u>In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.</u>, 101 F.R.D. at 44.

Good cause has been demonstrated and records have been sealed where there is a demonstrated risk of physical harm to the taxpayer or the taxpayer's family.  <u>Anonymous v. Commissioner</u>, 127 T.C. 89, 92-93 (2006).  Good cause has also been demonstrated where patents, trade secrets or confidential information are involved or where an individual's business reputation will be hurt.  <u>See</u> <u>In re Smith</u>, 656 F.2d 1101 (5th Cir. 1981) (striking an individual's name from factual resumes on due process grounds as resumes were prepared in criminal proceeding where the individual was not indicted); <u>Crystal Grower's Corp. v. Dobbins</u>, 616 F.2d 458 (10th Cir. 1980) (sealing portions of record involving documents alleged to be subject to attorney-client privilege or work product doctrine); <u>In re Sarkar</u>, 575 F.2d 870 (C.C.P.A. 1978) (sealing record involving patent application proceeding so that the information would remain a trade secret in the event of an adverse decision); <u>Sendi v. Prudential-Bache Sec.</u>, 100 F.R.D.

[*8] 21 (D.D.C. 1983) (sealing parties' tax returns to protect confidentiality and privacy interests). Merely asserting annoyance, embarrassment or harm to a person's personal reputation, however, is generally insufficient to demonstrate good cause and overcome the strong common law presumption in favor of access to court records. Willie Nelson Music Co. v. Commissioner, 85 T.C. at 921, 925 (record not sealed where nationally known entertainer sought to avoid public scrutiny or news coverage of case); Tavano v. Commissioner, T.C. Memo. 1991-237 (record not sealed where taxpayer had civil suit pending against employer and did not want employer to learn facts of case).

The whistleblower's counsel submitted an affidavit that demonstrates the severe degree of harm the whistleblower and the whistleblower's family members would risk if we do not seal the record. The affidavit and the petition demonstrate several key facts. First, targets are linked to terrorist organizations. The whistleblower received a death threat, communicated through targets' counsel, in connection with the whistleblower's cooperation with the Government investigation. Targets used armed guards to break into the whistleblower's office. Finally, the Government offered to place the whistleblower into the witness protection program. We find this fact compelling. It demonstrates the credibility of the death threat and the true risk of severe physical harm to the whistleblower.

**[\*9]** The supporting documents also demonstrate that targets have engaged in a pattern of harassment and litigious behavior with the goal of intimidating the whistleblower to remain silent. Targets' conduct has caused the whistleblower to spend significant amounts of money to defend against several actions in multiple forums and to hire counterterrorism experts to protect the whistleblower and the whistleblower's family. Additionally, targets' actions against the whistleblower have caused damage to the whistleblower's professional reputation. The Court also agrees with the whistleblower that the facts in this case are very specific and involve numerous events that would be recognizable by targets and in turn, might enable them to discover the whistleblower's identity.

In toto, we find these facts compelling. The whistleblower has demonstrated that the whistleblower and the whistleblower's family are at significant risk of severe physical harm if the case does not remain sealed. Targets have shown a pattern of intimidation, aggression and physical threats of harm towards the whistleblower. This Court will not place the whistleblower or the whistleblower's family in jeopardy as there is a substantial risk that if the record is not sealed, targets will uncover the whistleblower's identity and seek retribution.

We must evaluate this risk of physical harm against the public interest in access to judicial records. See Warner Commcns., Inc., 435 U.S. at 602; Does I

**[*10]** <u>Thru XXIII v. Advanced Textile Corp.</u>, 214 F.3d 1058, 1069 (9th Cir. 2000); <u>AT&T Co.</u>, 594 F.2d at 596; <u>Willie Nelson Music Co. v. Commissioner</u>, 85 T.C. at 919.  After careful consideration of the alleged facts of this case, we find that the balance favors the whistleblower.  The risk of extreme physical harm to the whistleblower and the whistleblower's family outweighs the countervailing public interest favoring open judicial proceedings.

<u>Permission To Proceed Anonymously</u>

The whistleblower has also requested permission to proceed anonymously. Proceeding anonymously is necessary to protect the whistleblower's professional reputation, economic interests and personal safety.

Recently, this Court adopted Rule 345 to create a mechanism to preserve the anonymity of whistleblowers and non-party taxpayers.  Whistleblowers seeking to proceed anonymously must file a motion with this Court setting forth a sufficient, fact-specific basis for anonymity.  Rule 345(a).  The petition and subsequent filings are temporarily sealed pending a ruling by the Court on the motion to proceed anonymously.  <u>Id.</u>  A whistleblower is permitted to proceed anonymously if the whistleblower presents a sufficient showing of harm that outweighs counterbalancing societal interests in knowing the whistleblower's identity.  <u>See</u> <u>Whistleblower 14106-10W v. Commissioner</u>, 137 T.C. 183 (2011); <u>see also</u> <u>Does I</u>

[*11] Thru XXIII, 214 F.3d at 1068. The decision whether to allow a party to proceed anonymously rests within the sound discretion of the trial court. Anonymous v. Commissioner, 127 T.C. at 94; see James v. Jacobson, 6 F.3d 233, 238 (4th Cir. 1993); see also sec. 7461(b)(1).

This Court has granted a motion to proceed anonymously where the taxpayer faced a risk of severe physical harm if the taxpayer's identity was revealed. See Anonymous v. Commissioner, 127 T.C. at 94 (holding that risk of "severe physical harm" to taxpayer and family outweighed the general public interest in knowing taxpayer's identity). Moreover, this Court has granted a whistleblower's request to proceed anonymously where the whistleblower was susceptible to professional stigma, retaliation and economic duress. See Whistleblower 14016-10W v. Commissioner, 137 T.C. at 203-204. The Court's decisions are consistent with the IRS Whistleblower Office general administrative practice of keeping whistleblowers' identities confidential. See id. at 205.

The whistleblower has satisfied the whistleblower's factual burden to proceed anonymously. The facts alleged in the petition and the affidavit attached to the motion to proceed anonymously demonstrate that disclosure of the whistleblower's identity could result in the risk of retaliation, social and

**[*12]** professional stigma and economic duress.[3] Most importantly, disclosure of the whistleblower's identity would place the whistleblower and the whistleblower's family at risk of physical harm. Targets are alleged to have ties to terrorist organizations and have already used armed men to raid the whistleblower's offices. Moreover, targets previously threatened the whistleblower's life. The Government's concern over the individuals and entities involved prompted it to offer the whistleblower placement in the witness protection program. There is no better evidence of the credibility of the death threat and the real risk that the whistleblower faces if the whistleblower's identity is revealed. In short, the nature and severity of potential harm that could befall the whistleblower outweighs the societal interest in knowing the whistleblower's identity.

For the foregoing reasons, we will grant the whistleblower's motion to seal and the whistleblower's motion to proceed anonymously.

<u>An appropriate order will be issued</u>.

---

[3]Revealing the whistleblower's identity, although a secondary consideration here, could adversely affect the whistleblower's professional reputation, current employment and future employment opportunities.